City of WARRENSVILLE HEIGHTS, Appellee,

v.

MOLLICK, Appellant.

[Cite as *Warrensville Hts. v. Mollick* (1992), 79 Ohio App.3d 494.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 59981.

Decided April 27, 1992.

*Howard S. Stern,* City Prosecutor, for appellee.

*Christopher R. Fortunato,* for appellant.

PRYATEL, Judge.

Defendant-appellant Ray Mollick appeals from the trial court's failure to suppress evidence prior to his plea of no contest to a charge of driving under a suspended license in violation of Warrensville Heights Codified Ordinances 335.07. For the reasons adduced below, we affirm.

A review of the record, which includes in large part a statement made pursuant to App.R. 9(C), reveals that a motion to suppress hearing was held by the trial court. The only witness called to testify at this hearing was Warrensville Heights Patrolman Robert Terpay. A summary of the testimony is provided in the App.R. 9(C) statement at pages 2 through 4:

"He [Terpay] was a duly sworn, uniformed police officer in an appropriately fully marked and equipped black and white police patrol car with overhead red/blue lights; he had come on duty the night of September 28, 1989 and [was] assigned to routine patrol of the east end, the area covering Banbury Village within the City of Warrensville Heights. He had been advised to pay particular attention to Banbury Village because of numerous reported complaints of suspicious, unusual activity associated with crime and illicit drugs.

"He further testified that Banbury Village was almost a totally black community and was familiar with the area; further in one of his routine slow patrols through the area as he was headed south on Banbury he passed a slow

moving Chevrolet Camaro headed northbound on Banbury with two white males, the driver being identified as the Defendant–Appellant Mollick. Officer Terpay turned around and within just a few minutes later arrived in front of 4907 Banbury where the Camaro was parked and again saw Appellant at this time standing alongside the vehicle and asked him for identification and what he was doing in the high drug crime area at 3:00 a.m.? In response Appellant handed the officer his Ohio operators license which the officer then had checked through the LEADS computer which revealed that Appellant's home address was in the far west Cleveland suburb of Westlake and that Appellant's driving privileges were under suspension indefinitely by the Bureau of Motor Vehicles (BMV).

"As a result of the BMV information Appellant was issued a traffic ticket for driving while his privileges to do so were under suspension (DUS).

"On cross-examination, the Patrolman testified that it was dark when this all happened, was not evasive about the distance the cars were apart when his headlights shined on the Appellant while the automobiles were moving, and when the Appellant was standing outside of the automobile when he was approached."

Following the denial of his motion to suppress, Mollick entered a plea of no contest on May 10, 1990, was found guilty, and was sentenced to a fine of $250 plus costs, ten days in jail, and suspension of driving privileges for ninety days. The sentence was stayed pending his timely appeal.

Mollick raises one assignment of error for review:

"The trial court erred in overruling the appellant's motion to suppress."

■ This court stated the following in State v. Smith (Aug. 29, 1991), Cuyahoga App. No. 58918, unreported, at 4–5, 1991 WL 185720:

"In State v. Andrews (1991), 57 Ohio St.3d 86 [565 N.E.2d 1271], the Supreme Court of Ohio reasoned that the court must look at the totality of the circumstances when determining the reasonableness of a police officer's stop and subsequent seizure of evidence.

"The Ohio State Supreme Court in Andrews lessened the standard required to find probable cause for a search to occur, however, admitted that there are no bright lines or easy answers in determining what is reasonable suspicion.

"In the application of Andrews to the case at bar, we are required to look through the eyes of the reasonable and prudent police officer who conducted the search and seizure and ask whether this was a reasonable search and seizure under the totality of the circumstances."

The Supreme Court of Ohio stated the following in State v. Williams (1990), 51 Ohio St.3d 58, 60, 554 N.E.2d 108, 110–111:

"*Terry* [*v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, 44 O.O.2d 383] stands for the proposition that 'a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.' *Id.* at 22 [88 S.Ct. at 1880, 20 L.Ed.2d at 906–907]. 'The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. See *id.*, at 23 [88 S.Ct. at 1881, 20 L.Ed.2d at 907]. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. *Id.*, at 21–22 [88 S.Ct. at 1879–80, 20 L.Ed.2d at 905–906]; see *Gaines v. Craven*, 448 F.2d 1236 (CA 9 1971); *United States v. Unverzagt*, 424 F.2d 396 (CA8 1970).' "

In the present case, Officer Terpay invoked the essence of "good police work" under the totality of the circumstances to suspect criminal activity, to wit: (1) the time was 3:00 a.m.; (2) the area was a high drug activity location; (3) the defendant and his passenger were white males; (4) the area in which these facts occurred is a predominantly black residential area; (5) Mollick was driving slowly down the street, and, as Terpay turned around his squad car, Mollick had parked his vehicle, exited the driver's side and stood beside the vehicle; and (6) the passenger had left the vehicle and was not in the area at the time Terpay approached Mollick at the parked vehicle. (In oral argument, counsel explained that the passenger went to an apartment.)

■ Given these facts, Terpay was justified in approaching Mollick, requesting that he identify himself, and examining the legitimacy of the identification. This request for and examination of Mollick's identification are a consensual encounter and implicate no Fourth Amendment interest since this request and examination are not a seizure. *State v. Cooper* (1989), 61 Ohio App.3d 344, 572 N.E.2d 790, citing *Florida v. Rodriguez* (1984), 469 U.S. 1, 5–6, 105 S.Ct. 308, 310–311, 83 L.Ed.2d 165, 170–171; *Immigration & Naturalization Serv. v. Delgado* (1984), 466 U.S. 210, 221–222, 104 S.Ct. 1758, 1765, 80 L.Ed.2d 247, 258–259; *Florida v. Royer* (1983), 460 U.S. 491, 497–498, 103 S.Ct. 1319, 1323–1324, 75 L.Ed.2d 229, 235–236. Additionally, Mollick was under no compulsion to respond to the request for identification and was free to go on his way until Terpay discovered the fact that Mollick was driving under suspension. See *State v. Cooper, supra*, at 346, 572 N.E.2d at 791. The fact that Mollick voluntarily produced his driver's license, rather than

some other form of identification such as his car registration, indicates further the consensual nature of the examination. Mollick cannot now complain that information gathered from that form of identification proved to be incriminating.

Assignment overruled.

*Judgment affirmed.*

JOHN F. CORRIGAN, J., concurs separately.

KRUPANSKY, J., dissents.

AUGUST PRYATEL, J., retired, of the Eighth Appellate District, sitting by assignment.

JOHN F. CORRIGAN, Judge, concurring.

Because I find this matter to be controlled by this court's pronouncements in *State v. Johnson* (1986), 34 Ohio App.3d 94, 517 N.E.2d 262, and *State v. Cooper* (1989), 61 Ohio App.3d 344, 572 N.E.2d 790, I concur in the determination that the motion to suppress was properly denied.

*State v. Johnson* involved police officers' observations of a male, standing on a corner, acting suspiciously. The officers asked him his name, then conducted a routine warrant check and learned that there was an outstanding warrant for his arrest. This court affirmed the subsequent denial of the defendant's motion to suppress, and stated:

"The United States Supreme Court has acknowledged that not all personal intercourse between the police and citizens involves the 'seizures' of persons. *Reid v. Georgia* (1980), 448 U.S. 438, [100 S.Ct. 2752, 65 L.Ed.2d 890]; *Terry v. Ohio* (1968), 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889], 44 O.O.2d 383. The test for determining whether there has been a seizure is whether, under the circumstances presented, a reasonable person would have believed he or she was not free to leave. *United States v. Mendenhall* (1980), 446 U.S. 544, 554 [100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509]. The freedom of movement may be curtailed by the police either by force or show of authority. *Dunaway v. New York* (1979), 442 U.S. 200 [99 S.Ct. 2248, 60 L.Ed.2d 824].

"In the case at bar, the defendant was approached by the police and asked his name. Although the police were in uniform, their guns were not drawn and the defendant was not ordered to do anything. The defendant voluntarily gave his name to the police and a routine warrant check was conducted. The check revealed that the defendant had an outstanding warrant. At that point, the police seized the defendant placing him under arrest.

"We do not believe that the mere presence of uniformed officers constitutes a seizure under the Fourth Amendment, [n]either does the fact that police asked, and the defendant answered, a question as to his identity. As stated by the United States Supreme Court in *Florida v. Royer* (1983), 460 U.S. 491, 497 [103 S.Ct. 1319, 1323, 75 L.Ed.2d 229, 235]:

" ' * * * [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. * * *' (Citations omitted.)

"Accordingly, we conclude that the defendant was not seized until after the police were aware of an outstanding warrant on the defendant. If there is no seizure within the meaning of the Fourth Amendment, then no constitutional right has been infringed. *Id.* at 498 [103 S.Ct. at 1324, 75 L.Ed.2d at 236]. Therefore, the trial court properly overruled the defendant's motion to suppress." (Footnotes omitted.) *Id.* at 96, 517 N.E.2d at 264.

Similarly, in *State v. Cooper, supra,* this court determined that pursuant to *Florida v. Rodriguez* (1984), 469 U.S. 1, 5–6, 105 S.Ct. 308, 310–311, 83 L.Ed.2d 165, 170–171; *Florida v. Royer* (1983), 460 U.S. 491, 497–498, 103 S.Ct. 1319, 1323–1324, 75 L.Ed.2d 229, 235–236; and *Immigration & Naturalization Serv. v. Delgado* (1984), 466 U.S. 210, 221–222, 104 S.Ct. 1758, 1765, 80 L.Ed.2d 247, 258–259, police interrogation relative to one's identity, or request for identification, is not a "seizure" within the meaning of the Fourth Amendment. This court stated:

"[I]t is clear that [defendant] was not under any compulsion to respond to Officer Chura's request for identification, and that [defendant] was free to go until Chura discovered the outstanding warrant. We therefore conclude that a 'consensual encounter' took place and that [defendant] was not seized within the meaning of the Fourth Amendment when asked for identification by the officer." *Id.,* 61 Ohio App.3d at 346, 572 N.E.2d at 791.

Likewise, in this case, the record reveals that Officer Terpay was on patrol and observed defendant driving slowly. He later saw defendant standing alongside the vehicle, and became suspicious due to the nature of the area and the late hour. The officer then asked defendant for identification. In response, defendant handed the officer his license, and a routine LEADS check revealed that defendant's driving privileges had been suspended, so Terpay issued a citation to him. By application of the foregoing precedent, the request for identification was a consensual encounter, and no seizure occurred until after the officer became aware that defendant had driven

without privilege to do so. Thus, defendant's Fourth Amendment rights were not violated, and the motion to suppress was properly denied.

KRUPANSKY, Judge, dissenting.

I respectfully dissent from the majority opinion for the reason that it completely disregards *stare decisis* in its analysis of the facts and law in the case *sub judice.* Despite the "gloss" of considering the "totality of the circumstances" applied by the majority herein, the facts of the case clearly demonstrate the following: (1) Officer Terpay's stop of appellant constituted an unreasonable search and seizure in violation of appellant's Fourth Amendment rights; and (2) since the stop was unreasonable, the evidence thus obtained, *viz.*, the knowledge that appellant's driver's license was suspended, should have been suppressed as the "fruit of a poisonous tree."

Appellant advances three separate arguments in support of his assignment of error. However, in essence, he argues Fourth Amendment rights were violated: the officer lacked probable cause to stop him, and, as a consequence, the citation for driving while under suspension was improper. Appellant's argument is persuasive.

Officer Terpay did not direct appellant to stop his vehicle but merely approached appellant. Appellant was at that point outside his own vehicle leaning against it. Officer Terpay had parked his patrol car directly behind appellant's vehicle and was a uniformed police officer. He asked appellant what appellant's purpose was for being in the neighborhood at that hour of the morning and requested some identification. Appellant could reasonably assume he was not free to leave at this point. Consequently, it is clear Officer Terpay conducted an "investigative stop" of appellant. *Brown v. Texas* (1979), 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357.

On this issue, the majority alludes to the Supreme Court's opinion of *State v. Andrews* (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271, apparently, however, without actually reading the opinion. In *Andrews*, the Supreme Court stated as follows:

"In *Terry*, the United States Supreme Court held that a police officer may stop and investigate unusual behavior, even without probable cause to arrest, *when he reasonably concludes that the individual is engaged in criminal activity. In assessing that conclusion, the officer 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'* Id. [392 U.S.] at 21 [88 S.Ct. at 1879, 20 L.Ed.2d at 90, 44 O.O.2d at 393]. Furthermore, the standard against which the facts are judged must be an objective one: '[W]ould the facts available to the officer at the moment of the seizure or the

search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?' *Id.* at 21–22 [88 S.Ct. at 1880, 20 L.Ed.2d at 90, 44 O.O.2d at 393].

" * * * [C]ourts have concluded that *an objective and particularized suspicion that criminal activity was afoot must be based on the entire picture—a totality of the surrounding circumstances. Id. [United States v. Cortez* (1981), 449 U.S. 411,] at 417–418 [101 S.Ct. 690, at 694–695, 66 L.Ed.2d 621, 628–629]; *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489; *United States v. Rickus* (C.A. 3, 1984), 737 F.2d 360, 365. * * *

" * * *

" * * * An area's reputation for criminal activity is an articulable fact which is a *part* of the totality of circumstances surrounding a stop to investigate suspicious behavior. *Bobo, supra,* at 179, 524 N.E.2d at 491; [*State v.*] *Freeman* [(1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044], *supra.* See, also, *United States v. Magda* (C.A.2, 1976), 547 F.2d 756, 758, certiorari denied (1977), 434 U.S. 878 [98 S.Ct. 230, 54 L.Ed.2d 157]." (Emphasis added.) *State v. Andrews, supra,* 57 Ohio St.3d at 87–88, 565 N.E.2d at 1273–1274.

In the case *sub judice,* however, "the area's reputation for criminal activity" is the *only* articulable fact Officer Terpay could point to in order to justify his approach. Admittedly, it was very early in the morning, and appellant's vehicle was moving slowly. However, these facts in themselves do not support a "reasonable suspicion" appellant "might be engaged in criminal activity." Cf. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489.

Indeed, the facts of the case *sub judice* are similar to those faced by the United States Supreme Court in *Brown v. Texas, supra.* In *Brown,* appellant was arrested after refusing to identify himself to a police officer who had stopped appellant as he was walking in an alley in a "high crime area" because he "looked suspicious." In overturning appellant's conviction, the Supreme Court stated as follows:

"The flaw in the State's case is that none of the circumstances preceding the officers' detention of appellant justified a reasonable suspicion that he was involved in criminal conduct. Officer Venegas testified at appellant's trial that the situation in the alley 'looked suspicious,' but he was unable to point to any facts supporting that conclusion. There is no indication in the record that it was unusual for people to be in the alley. *The fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct.* In short, the appellant's activity was no different from the activity of other pedestrians in that neighborhood. When pressed, Officer Venegas acknowledged that the only reason he stopped appellant was to ascertain his identity.

The record suggests an understandable desire to assert a police presence; however, that purpose does not negate Fourth Amendment guarantees.

"In the absence of any basis for suspecting appellant of misconduct, the balance between the public interest and appellant's right to personal security and privacy tilts in favor of freedom from police interference." (Emphasis added.)

Furthermore, this is the law as articulated by the Ohio Supreme Court as well.

In *State v. Chatton* (1984), 11 Ohio St.3d 59, at 61, 11 OBR 250, at 251-252, 463 N.E.2d 1237, at 1239, the Ohio Supreme Court stated as follows:

"It is firmly established that the detention of an individual by a law enforcement officer must, at the very least, be justified by 'specific and articulable facts' indicating that the detention was reasonable. *Terry v. Ohio* (1968), 392 U.S. 1, 21–22 [88 S.Ct. 1868, 1879–1880, 20 L.Ed.2d 889, 905–906, 44 O.O.2d 383, 393–394.] * * *

"* * * *

"In *Brown v. Texas, supra,* the United States Supreme Court held that merely because an individual 'looked suspicious' provided no justification to detain him and demand that he identify himself.

"Furthermore, in *Delaware v. Prouse* (1979), 440 U.S. 648 [99 S.Ct. 1391, 59 L.Ed.2d 660], the United States Supreme Court condemned the use of random stops of vehicles to check the validity of the operator's driver's license and the vehicle's registration. The court held at 663 [99 S.Ct. at 1401, 59 L.Ed.2d at 673]:

"'* * * [E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.' "

The Supreme Court further noted:

"* * * The reality of the situation is that the police officer * * * articulated no specific facts upon which a reasonable suspicion could be based that appellee was violating the law. * * *" *Id.* at 62, 11 OBR at 252, 463 N.E.2d at 1239.

From the foregoing it is clear the initial "stop" of appellant was a violation of his Fourth Amendment rights. That being so, Officer Terpay had no authority to demand appellant give him some identification.

Moreover, to take appellant's driver's license, which was given only at the request of the officer, not voluntarily as indicated by the majority, and to check it through the LEADS computer was also a clear violation of appellant's Fourth Amendment rights. Assume *arguendo* the officer had the right to request identification of appellant, the appellant complied with the officer's request. However, at this point the officer had no right to proceed further to check the license through the LEADS computer. As far as the officer knew, appellant was not in violation of the law. There was nothing on the face of the driver's license to arouse Officer Terpay's suspicion that a crime had been committed.

A conviction must be reversed when the evidence, *viz.*, the driver's license, is discovered as a result of an unreasonable detention by a police officer. *Fairborn v. Orrick* (1988), 49 Ohio App.3d 94, 550 N.E.2d 488; see, also, *State v. Frye* (1985), 21 Ohio App.3d 133, 21 OBR 141, 487 N.E.2d 580, where, on facts closely analogous to those of the case *sub judice*, the court relied on *Chatton* to overturn a conviction for driving under a suspension, holding a police officer cannot detain a driver and check his license when the officer has no reason to believe the driver is violating the law.

Since Officer Terpay's stop of appellant was unreasonable and the evidence thus obtained was the "fruit of a poisonous tree," the trial court erred when it denied appellant's motion to suppress.

Accordingly, appellant's assignment of error has merit and the judgment of the trial court should be reversed.