DECISION
This is an appeal by defendant, Kimberly K. Barnhart, from a judgment of the Franklin County Municipal Court, following her conviction for operating a motor vehicle while under the influence ("OMVI"). Defendant was sentenced to one hundred eighty days incarceration, with one hundred seventy-seven days suspended upon condition of probation, and the remaining three days suspended upon condition that defendant complete an alcohol education and assessment program. Defendant was also fined $300 and the court imposed a three-year driver's rights suspension, with restoration of driving privileges contingent upon a recommendation from defendant's probation officer.
On appeal, defendant sets forth the following single assignment of error for review:
 THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS AS THE OFFICER LACKED REASONABLE SUSPICION BASED ON SPECIFIC AND ARTICULABLE FACTS TO INITITATE AN INVESTIGATORY STOP.
Defendant's sole contention on appeal is that the trial court erred in overruling her pretrial motion to suppress.
The record indicates that, on October 19, 1998, the trial court conducted a hearing on defendant's motion to suppress. The sole witness at the hearing was New Albany Police Officer Joel Strahler. Officer Strahler gave the following testimony regarding the events leading to defendant's arrest.
On April 5, 1998, Officer Strahler was on patrol in the city of New Albany at 1:30 a.m., when he observed a vehicle parked at the New Albany Mill, a feed and grain mill. The business establishment was not open at the time. The vehicle appeared to be occupied and the motor was running. Officer Strahler pulled in behind the vehicle. The officer turned on a spotlight and approached the vehicle to ascertain whether "everything was in order or okay, if there was any vehicle problems or anything else along that line." (Tr. 8.)
Officer Strahler approached the vehicle on the driver's side and made himself "present with a flashlight to indicate who I am." (Tr. 9.) The defendant was in the driver's seat and she "indicated to me to `wait one minute' with her index finger, wait one minute and then she would talk to me." (Tr. 9.) The defendant was using a portable phone at the time. Officer Strahler "stood idly by, waiting to see if she would talk to me, make sure everything was okay." (Tr. 9.) When defendant continued on the phone, Officer Strahler "knocked on the window to ask her if she would talk to me so I could find out what the situation was, if everything was okay." (Tr. 9.)
The defendant eventually rolled down her window and the officer asked her for identification. As Officer Strahler and the defendant began conversing, the officer noticed "a very strong odor of alcoholic beverage inside the vehicle." (Tr. 11.) Officer Strahler also noticed that defendant's eyes were very bloodshot and that she appeared to be under the influence of alcohol. The officer asked defendant if she had been drinking. Defendant responded that she was "looking for a party." (Tr. 12.)
The officer then asked her to put the vehicle in park, shut off the engine and step outside of the car. After putting defendant through a series of standard field sobriety tests, the officer concluded that defendant was intoxicated. The officer then placed defendant under arrest.
Defendant asserts that the facts surrounding defendant's arrest indicate that the arresting officer was "investigating" defendant's vehicle, and that the officer lacked reasonable suspicion that criminal activity had occurred at the time he approached defendant's parked car. Defendant maintains that, based on the actions of the officer, the confrontation rose to the level of an investigatory stop.
The Ohio Supreme Court has held that, "[i]n reviewing a ruling on a motion to suppress, an appellate court must bear in mind that the weight of the evidence and the credibility of witnesses are for the trier of fact."State v. Depew (1988), 38 Ohio St.3d 275, 277. Thus, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." State v. Fields (Dec. 2, 1996), Athens App. No. 96CA1742, unreported. "However, an appellate court determines as a matter of law, without deferring to the trial court's conclusions, whether these facts meet the applicable legal standard." Id.
In State v. Brock (June 1, 1998), Clermont App. No. CA97-09-077, unreported, the court noted:
 Fourth Amendment guarantees are not implicated in all personal encounters between police officers and citizens. Florida v. Bostick (1991), 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389. "An encounter which does not involve physical force or a show of authority is a consensual encounter that does not trigger Fourth Amendment scrutiny; therefore, an officer does not need reasonable suspicion merely to approach an individual in order to make reasonable inquiries of him." State v. Smith, 1995 Ohio App. LEXIS 4555, *3 (Oct. 16, 1995), Madison App. No. CA95-03-009, unreported. Consequently, a police officer's mere approach and questioning of an individual is not a seizure which would require reasonable suspicion supported by specific and articulable facts for Fourth Amendment purposes. Id.; Bostick at 435, 111 S.Ct. at 2386; Warrensville Hts. v. Mollick (1992), 79 Ohio App.3d 494, 497, 607 N.E.2d 861; State v. Johnston (1993), 85 Ohio App.3d 475, 478, 620 N.E.2d 128.
Regarding encounters in which an officer approaches a citizen and poses questions, one leading commentator has noted:
 * * * [A] street encounter does not amount to a fourth amendment seizure merely because * * * the other party to the encounter is known to be a policeman. Rather, the confrontation is a seizure only if the officer adds to those inherent pressures by engaging in conduct significantly beyond that accepted in social intercourse. The critical factor is whether the policeman, even if making inquiries a private citizen would not, has otherwise conducted himself in a manner which would be perceived as a nonoffensive contact if it knoccurred between two ordinary citizens.
 Under this approach, an officer has not made a seizure if, for example, he interrogated "in a conversational manner," "did not order the defendant" to do something or "demand that he" do it, did not ask questions which were "overbearing or harassing in nature," and did not "make any threats or draw a weapon." * * * Even physical contact is acceptable if it is "a normal means of attracting a person's attention" or obviously serves some nonseizure purpose. On the other hand, an encounter becomes a seizure if the officer engages in conduct which a reasonable man would view as threatening or offensive even if performed by another private citizen. This would include such tactics as pursuing a person who has attempted to terminate the contact by departing, continuing to interrogate a person who has clearly expressed a desire not to cooperate, renewing an encounter with a person who earlier responded fully to police inquiries, calling to such a person to halt, holding a person's identification papers or other property, blocking the path of the suspect, physically grabbing and moving the suspect, drawing a weapon, and encircling the suspect by many officers, in addition to the more obvious ones. [4 LaFave, Search and Seizure (1996) 100-104,]
The above commentator further discusses, relevant to the instant action, encounters in which an officer approaches and makes contact with a person seated in a parked vehicle:
 * * * As noted earlier, the mere approach and questioning of such persons does not constitute a seizure. The result is not otherwise when the officer utilizes some generally accepted means of gaining the attention of the vehicle occupant or encouraging him to eliminate any barrier to conversation. The officer may tap on the window and perhaps even open the door if the occupant is asleep. A request that the suspect open the door or roll down the window would seem equally permissible, but the same would not be true of an order that he do so. Likewise, the encounter becomes a seizure if the officer orders the suspect to "freeze" or to get out of the car. So too, other police action which one would not expect if the encounter was between two private citizens — boxing the car in, approaching it on all sides by many officers, pointing a gun at the suspect and ordering him to place his hands on the steering wheel, or use of flashing lights as a show of authority-will likely convert the event into a Fourth Amendment seizure. [Id. at 106-108.]
In Thompson v. State (Ark. 1990), 797 S.W.2d 450, a police officer was on patrol at 1:30 a.m. when he observed the appellant's car parked legally with its lights on and motor running. Ten minutes later, the officer observed that the vehicle was still parked with its lights on and motor running. The officer stopped his car behind the appellant's car and approached appellant's vehicle to investigate. At a suppression hearing, the officer indicated that the reasons he stopped to investigate were because "there might be something wrong with the driver" or "there might be something going on that shouldn't be going on." Id. at 451.
After approaching the car, the officer questioned appellant, who volunteered that he had been to a club and was taking his girlfriend home. The officer smelled alcohol on appellant and the officer asked appellant to step out of the car. Appellant was unable to perform a sobriety test, and the officer informed appellant that he was under arrest.
On appeal, the appellant raised a similar Fourth Amendment argument as the defendant in the instant case. Specifically, the appellant in Thompson
asserted that the officer's "approaching his parked car constituted a seizure or detention and that this seizure was unlawful under the fourth amendment because the officer had no reason to suspect that the appellant had committed or was about to commit a crime." Id. at 451.
The court in Thompson rejected appellant's contention, holding:
 After observing a car with its lights on and motor running parked in the early morning hours in the same place for ten minutes, Officer Parsons acted properly in approaching appellant's car and asking the appellant "what the problem was." At this point, the record does not show that Officer Parsons restrained the liberty of the appellant by means of physical force or a show of authority. The officer did not approach the car exhibiting a weapon or ordering the appellant out of his vehicle. Thus, there was no "seizure" under the fourth amendment. The "seizure" of the appellant occurred only after the officer addressed the appellant and noticed the odor of alcohol after appellant volunteered he had been at a club. Then, the officer had a reasonable suspicion that the appellant had committed or was about to commit a DWI and properly asked him to exit his car. [Id. at 452.]
A number of Ohio appellate courts have also found the absence of a "seizure" under similar factual circumstances. See, e.g.,State v. Robinson (Sept. 8, 1997), Butler App. No. CA97-04-093, unreported (no seizure at the time officer approached defendant's vehicle and made inquiries of driver, whose vehicle was parked at night in parking lot of establishment that was no longer open for business; officer's initial contact with defendant "was a consensual encounter, not a stop or seizure which would implicate Fourth Amendment scrutiny and require reasonable suspicion"); State v. Boys (June 26, 1998), Hamilton App. Nos. C-970556 
C-970557, unreported (trial court erred in granting motion to suppress evidence on ground that police officers did not have reasonable and articulable suspicion that defendant was involved in criminal activity when they first approached his vehicle; no seizure occurred at that time because the officers went up to check on defendant's condition); Brock, supra,
(police officer's mere approach of appellant was not a stop or seizure which would trigger Fourth Amendment scrutiny and require reasonable suspicion; officer did not pull appellant's vehicle over or order appellant from his vehicle, nor did he activate his overhead lights when he arrived at scene of parked car); Cuyahoga Falls v. Sandstrom (June 21, 1995), Summit App. No. 17000, unreported (defendant not seized, within meaning of Fourth Amendment, at time officer approached defendant's parked vehicle and asked defendant questions; thus, officer "was not required to state a reasonable and articulable suspicion for his approach and initial interrogation").
In the present case, at the suppression hearing, defense counsel asserted that, in order for the officer to approach the vehicle, the officer needed a reasonable suspicion that criminal activity had occurred. Defense counsel further argued that, even if this did not constitute a stop, at the time the officer ordered defendant to step out of the car "it is a stop and there is no reasonable suspicion of criminal activity at that point yet." (Tr. 26.) Defendant's interpretation of the law is mistaken.
As previously noted, "a police officer's mere approach and questioning of an individual is not a seizure which would require reasonable suspicion supported by specific and articulable facts for Fourth Amendment purposes."Brock, supra. Under the facts presented at the suppression hearing, the evidence supports the trial court's finding that there was no seizure of defendant at the time Officer Strahler initially approached defendant's vehicle and questioned her. The officer did not stop defendant's vehicle; rather, defendant's car was already stopped in the parking lot of a closed business establishment at 1:30 a.m. Further, the officer pulled his cruiser behind defendant's vehicle, and there is no suggestion that defendant's egress from the parking lot was blocked had she chosen to drive away. Although the officer turned on a spotlight, the record does not indicate that he activated overhead flashing lights or a siren. The officer approached the vehicle and tapped on the window "to ask her if she would talk to me." The defendant offered that she was looking for a party, and there is nothing in the facts presented at the suppression hearing to indicate that defendant expressed a desire not to speak to the officer. Further, the voluntariness of defendant's response does not depend on her having been first informed that she was free to decline to cooperate with the officer's inquiry. United States v. Mendenhall (1980),100 S.Ct. 1870, 1878.
After talking with defendant, the officer noticed that defendant's eyes were bloodshot and that she appeared to be intoxicated. While we agree with defendant that a seizure occurred at the point the officer asked defendant to step out of the car, the officer at that time could point to specific, articulable facts giving the officer a reasonable suspicion that defendant had been driving under the influence of alcohol; thus, the seizure of defendant at that time, in order to have defendant take a field sobriety test, did not violate defendant's Fourth Amendment rights. Boys, supra.
See, also, Brock, supra, (based upon officer's own personal observations of appellant, including appellant's bloodshot and glassy eyes and odor of alcohol, officer established requisite reasonable suspicion necessary to detain appellant until another officer arrived to conduct field sobriety tests).
Based upon the foregoing, the trial court did not err overruling defendant's motion to suppress, and defendant's assignment of error is overruled.
Accordingly, having overruled defendant's single assignment of error, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
PETREE and TYACK, JJ, concur.