DECISION AND JUDGMENT ENTRY
This is an appeal from a Ross County Common Pleas Court judgment granting a motion to suppress evidence filed by Michael A. Bennett, defendant below and appellee herein. The state appeals pursuant to Crim.R. 12(J) and raises the following assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED WHEN FINDING THAT THE DEFENDANT WAS ILLEGALLY DETAINED BY POLICE OFFICERS."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT'S CONSENT TO SEARCH WAS NOT VOLUNTARY."
On February 26, 1999, the Ross County Grand Jury returned an indictment charging appellee with one count of cocaine possession, in violation of R.C. 2925.11. On April 27, 1999, appellee filed a motion to suppress evidence. Appellee asserted that the trial court should suppress the evidence discovered during the search of his person because the law enforcement officers violated his Fourth Amendment right to be free from unreasonable searches and seizures.
On June 11, 1999, the trial court held a hearing to consider appellee's motion to suppress evidence. At the hearing, Chillicothe Police Officer Keith Washburn testified that on December 24, 1998, at approximately 3:30 a.m., he was patrolling the area of Seventh and Mechanic Streets, an area known for drug activity. While on patrol in the area, the officer noticed a vehicle parked in an alley. The officer stated that he decided to approach the vehicle.
When Officer Washburn approached the vehicle, he asked appellee, the occupant, if "everything [was] okay." Appellee indicated that he was fine. The officer asked appellee for identification and what his purpose was for being parked in the alley. Appellee responded that he was waiting for his girlfriend to take him home. The officer stated that less than a minute after appellee informed the officer that he was waiting for his girlfriend, he also asked appellee whether his car had broken down. Officer Washburn testified that appellee replied that "the alternator was blown." The officer further testified that appellee admitted to being too drunk to drive home. A LEADS check on appellee revealed that he had no driving privileges.
The officer testified that during his encounter with appellee, appellee appeared "very nervous" and "was making hand gestures toward the right side of the vehicle." Officer Washburn stated that he asked appellee whether appellee had any drugs or weapons on his person or in the vehicle. Appellee responded that he did not. The officer then asked appellee whether he would consent to a search of his person and of his vehicle for drugs and weapons. The officer stated that he advised appellee that he had the right to refuse a search and that he was free to leave. Officer Washburn testified that appellee responded, "[S]earch me, I don't have anything." Officer Washburn testified that he searched appellee's person and discovered a cigarette pack containing two white colored rocks that field tests revealed to be cocaine.
Chillicothe Police Officer Charles Campbell testified that he assisted Officer Washburn in approaching appellee's vehicle. Officer Campbell stated that appellee informed the officer that appellee parked his vehicle in the alley because he was too drunk to drive home. Officer Campbell stated that the length of the officers' encounter with appellee, from the point when the officers approached the vehicle to the point when Officer Washburn discovered the cocaine, lasted approximately two to three minutes.
On September 1, 1999, the trial court granted appellee's motion to suppress evidence. The trial court determined that the officers' initial approach of appellee's vehicle was consensual. The trial court further determined, however, that at some point prior to the time when appellee purportedly consented to the search, the nature of the encounter ripened into aFourth Amendment seizure.[1] Consequently, the trial court found that the law enforcement officers lacked reasonable suspicion to continue their seizure of appellee. Accordingly, the trial court found that: (1) appellee was illegally detained; (2) appellee purportedly consented to the search of his person during the illegal detention, and (3) appellee's consent was not the product of an independent act of free will. The state filed a timely notice of appeal.
In its first assignment of error, the state contends that the trial court erred by determining that the law enforcement officers illegally detained appellee. The state asserts that the officers pointed to specific and articulable facts sufficient to justify the continued detention. We agree with the state that the trial court erred by determining that the law enforcement officers illegally detained appellee, albeit for different reasons.
We initially note that appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. See State v. Long (1998), 127 Ohio App.3d 328,332, 713 N.E.2d 1, 3. When ruling on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See State v. Dunlap
(1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988, 995; State v.Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583, 584. Accordingly, a reviewing court must defer to the trial court's findings of fact if competent, credible evidence exists to support the trial court's findings. See Dunlap, supra; Long,supra; State v. Medcalf (1996), 111 Ohio App.3d 142,675 N.E.2d 1268. The reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. See Long; State v. Williams (1993), 86 Ohio App.3d 37,619 N.E.2d 1141. See, generally, Ornelas v. United States (1996),517 U.S. 690, 134 L.Ed.2d 911, 116 S.Ct. 1657.
The Fourth and Fourteenth Amendments to the United States Constitution,[2] as well as Section 14, Article I of the Ohio Constitution,[3] protect individuals against unreasonable governmental searches and seizures. Delaware v. Prouse (1979),440 U.S. 648, 662, 99 S.Ct. 1391, 59 L.Ed.2d 660; State v.Gullett (1992), 78 Ohio App.3d 138, 143, 604 N.E.2d 176, 179. [A] search conducted without a warrant issued upon probable cause is `per se unreasonable * * * subject only to a few specifically established and well-delineated exceptions.'"Schneckloth v. Bustamonte (1973), 412 U.S. 218, 93 S.Ct. 2041,36 L.Ed.2d 854 (quoting Katz v. United States (1967), 389 U.S. 347,357, 88 S.Ct. 507, 19 L.Ed.2d 576).
A search conducted pursuant to consent is a specifically established and well-delineated exception to theFourth Amendment's general warrant requirement. See id.,412 U.S. at 219, 93 S.Ct. 2041, 36 L.Ed.2d 854. "`[W]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given.' Bumper v. North Carolina [1968],391 U.S. 543, 548[, 88 S.Ct. 1788, 20 L.Ed.2d 797]. * * *." Id.,412 U.S. at 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (citations omitted); see, also, Florida v. Jimeno (1991), 500 U.S. 248, 250- 51, 111 S.Ct. 1801, 114 L.Ed.2d 297. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of `objective' reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Jimeno, 500 U.S. at 250-51,111 S.Ct. 1801, 114 L.Ed.2d 297.
When, however, consent is obtained "during a period of illegal detention," the consent is negated "even though voluntarily given if [the consent is] the product of the illegal detention and not the result of an independent act of free will."Florida v. Rover (1983), 460 U.S. 491, 501, 103 S.Ct. 1319,75 L.Ed.2d 229; see, also, State v. Robinette (1997), 80 Ohio St.3d 234,685 N.E.2d 762, paragraph three of the syllabus; State v.Lovensheimer (Dec. 23, 1998) Ross App. No. 98 CA 2420, unreported ("There is a presumption * * * that when consent is obtained after illegal police activity, the unlawful police action `presumptively taints and renders involuntary any consent to search.'"). As the court explained in Robinette:
 "Once an individual has been unlawfully detained by law enforcement, for his or her consent to be considered an independent act of free will, the totality of the circumstances must clearly demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave. (Florida v. Rover (1983), 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229; Schneckloth v. Bustamonte (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854, followed.)"
Id., paragraph three of the syllabus.
We thus begin our analysis by determining whether appellee consented to the officers' search of appellee's person during a period of "illegal detention," i.e., a seizure in violation of the Fourth Amendment. If appellee consented to the search during an illegal detention, the state bears the burden of proving that under the totality of the circumstances, appellee's consent was "an independent act of free will," and not a result of the illegal detention. See Rover, supra; Robinette, supra. If, however, no illegal detention occurred, the state need not demonstrate that appellee's consent was an independent act of free will. Rather, the state must illustrate that the totality of the circumstances establish that appellee voluntarily consented to the search. See, generally, Schneckcloth, supra 3 LaFave, Search and Seizure (3 Ed. 1996) Section 8.2(d).
We note that the Fourth Amendment is not implicated in every police-citizen encounter. United States v. Mendenhall (1980),446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497. Rather, it is when the encounter rises to the level of a "seizure" thatFourth Amendment concerns arise. As the court explained in Terry v.Ohio (1968), 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889:
 "Obviously, not all personal intercourse between policemen and citizens involves `seizures' of persons. Only when the officer, by means of a physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a `seizure' has occurred."
See, also, Florida v. Bostick (1991), 501 U.S. 425, 434,111 S.Ct. 2382, 115 L.Ed.2d 389.
A "seizure" in the context of the Fourth Amendment occurs when there is some application of physical force, even if extremely slight, or a show of authority to which the individual yields. California v. Hodari D. (1991), 499 U.S. 621, 623,111 S.Ct. 1547, 113 L.Ed.2d 690; Terry, supra. As the court stated in Hodari D.:
 "To constitute a seizure of the person, just as to constitute an arrest — the quintessential `seizure of the person' under the Fourth Amendment jurisprudence — there must be either the application of physical force, however slight, or where that is absent, submission to an officer's show of authority' to restrain the subject's liberty."
Id. A person has been "seized" within the meaning of theFourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave. Mendenhall, 446 U.S. at 554,100 S.Ct. 1870, 64 L.E.2d 497; see, also, Michigan v. Chesternut (1988),486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565. The reasonable person standard is objective and permits police to determine in advance whether conduct that they contemplate will implicate Fourth Amendment guarantees. Chesternut,
486 U.S. at 5741 108 S.Ct. 1975, 100 L.Ed.2d 565.
 "In order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' request or otherwise terminate the encounter."
State v. Bird (Dec. 13, 1992), Washington App. No. 92 CA 2, unreported (citing Bostick, supra). "Whether a seizure has occurred is a question of fact to be determined from the totality of the circumstances." State v. Hummons (Sept. 18, 1996), Hamilton App. No. C-950747, unreported (citing Michigan v.Chesternut (1988), 486 U.S. 567, 573, 108 S.Ct. 1975,100 L.Ed.2d 565). "A reviewing court will not reverse the trial court's decision on that issue unless it is `clearly erroneous.'" Id.
While no "litmus-paper test [exists] for distinguishing a consensual encounter from a seizure," Royer, 460 U.S. at 506,103 S.Ct. 1319, 75 L.Ed.2d 229, certain factors may indicate that a seizure has occurred.
 "[A]n encounter becomes a seizure if the officer engages in conduct which a reasonable man would view as threatening or offensive even if performed by another private citizen. This would include such tactics as pursuing a person who has attempted to terminate the contact by departing, continuing to interrogate a person who has clearly expressed a desire not to cooperate, renewing an encounter with a person who earlier responded fully to police inquiries, calling to such a person to halt, holding a person's identification papers or other property, blocking the path of the suspect, physically grabbing and moving the suspect, drawing a weapon, and encircling the suspect by many officers * * *."
4 LaFave, Search and Seizure (3 Ed. 1996) 102-04, Section 9.3(a) (footnotes omitted); see, also, State v. Lawrence (Nov. 21, 1995), Franklin App. No. 9SAPAO4-459, unreported.
In contrast, "[s]o long as a reasonable person would feel free `to disregard the police and go about his business' the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." Bostick, 501 U.S. at 434,111 S.Ct. 2382, 115 L.Ed.2d 389 (quoting Hodari D., 499 U.S. at, 628,111 S.Ct. 1547, 113 L.Ed.2d 690)
No Fourth Amendment seizure occurs when a law enforcement officer "merely approach[es] an individual on the street or in another public place, * * * ask[s] him if he is willing to answer some questions, [or] * * * questions * * * him if the person is willing to listen * * * *." Royer, 460 U.S. at 497,103 S.Ct. 1319, 75 L.Ed.2d 229; see, also, Bostick, 501 U.S. at 434,111 S.Ct. 2382, 115 L.Ed.2d 389 (stating that "mere police questioning does not constitute a seizure"). Additionally, "no seizure occurs when police * * * ask to examine the individual's identification, and request consent to search his or her luggage — so long as the officers do not convey a message that compliance with their requests is required." Bostick, 501 U.S. at 437,111 S.Ct. 2382, 115 L.Ed.2d 389; see, also, Royer, 460 U.S. at 501,103 S.Ct. 1319, 75 L.Ed.2d 229 ("Asking for and examining * * * [a] driver's license" is permissible."); State v. Pierce (1998),125 Ohio App.3d 592, 596-97, 709 N.E.2d 203, 206 (stating that approaching an individual, asking questions, and requesting identification does not constitute a seizure); State v. Daniel
(1992), 81 Ohio App.3d 325, 328, 610 N.E.2d 1099, 1101 ("No seizure occurs where a police officer asks questions of an individual and asks to examine his identification, so long as the officer does not convey the message that compliance with the requests is required."); Warrensville Heights v. Mollick (1992),79 Ohio App.3d 494, 497, 607 N.E.2d 861, 863, jurisdictional motion overruled (1992), 65 Ohio St.3d 1465, 602 N.E.2d 1173
(requesting and examining an individual's identification does not constitute a seizure)
Moreover, we note that "the mere approach and questioning of persons seated within parked vehicles does not constitute a seizure so as to require reasonable suspicion supported by specific and articulable facts."[4] State v. Bird (Dec. 31, 1992), Washington App. No. 92 CA 2, unreported; see, also, Statev. Boys (1998), 128 Ohio App.3d 640, 642, 716 N.E.2d 273, 279;State v. Johnston (1993), 85 Ohio App.3d 475, 478,620 N.E.2d 128, 130; State v. Ebright (Mar. 20, 2000), Athens App. No. 99 CA 41, unreported; State v. Wolske (May 29, 1998), Wood App. No. WD-97-061, unreported; State v. Turley (Mar. 6, 1997), Lawrence App. No. 96 CA 20, unreported; State v. Robinson (Sept. 8, 1997), Butler App. No. CA97-04-093, unreported; State v. Lopez (Sept. 28, 1994), Greene App. No. 94-CA-21, unreported (approaching parked vehicle and questioning occupants is not a traffic stop requiring Fourth Amendment scrutiny); State v. Hovarth (Sept. 3, 1993), Portage App. No. 92-P0012, unreported (stating thatFourth Amendment not triggered when officers parked patrol car, walked toward vehicle, met occupants, and asked for identification)
Although law enforcement officers may approach an individual, and request the individual to answer questions, produce identification, etc., the individual "need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way." Royer, 460 U.S. at 497-98,103 S.Ct. 1319, 75 L.Ed.2d 229. "[A]n individual may decline an officer's request without fearing prosecution" or without fearing that the refusal to cooperate will "furnish the minimal level of objective justification needed for a detention or seizure." Bostick, 501 U.S. at 437.
In the case at bar, we agree with the trial court's conclusion that appellee was not "seized," within the context of the Fourth Amendment, when the officers approached appellee's parked vehicle. The record contains no evidence that the officers restrained appellee's liberty or applied any amount of physical force. Rather, the officers permissibly approached a parked vehicle and examined appellee's identification. See,e.g. Bird, supra.
Thus, because the initial encounter between appellee and the officers did not rise to the level of a Fourth Amendment seizure, the encounter was consensual. The encounter did not therefore implicate Fourth Amendment concerns. An officer need not possess reasonable suspicion or probable cause to initiate a consensual encounter.
The trial court determined that what began as a consensual encounter ripened into a Fourth Amendment seizure prior to the point when the officers requested appellee's consent to search his person. We disagree with the trial court's conclusion on this point, however. We do not believe that the record supports the conclusion that the consensual encounter ripened into aFourth Amendment seizure.
As we stated above, approaching a vehicle, asking for identification, and questioning a person seated within the vehicle does not constitute a Fourth Amendment seizure requiring reasonable suspicion. If, however, an officer indicates, through his actions or words, that the individual is not free to ignore the officer and go on his way, Fourth Amendment concerns will arise.
In Mendenhall, the court determined that the encounter between the defendant and the law enforcement officers was consensual and did not constitute a seizure requiringFourth Amendment scrutiny. The court noted that: (1) the officers had not seized any items of the defendant's personal property; (2) the officers immediately returned the defendant's airline ticket and identification; and (3) the officers advised the defendant that he could decline the search. Id., 446 U.S. at 555,100 S.Ct. 1870, 64 L.Ed.2d 497.
In Bostick, the court considered whether a police-citizen encounter amounted to a Fourth Amendment seizure. The Bostick
court noted that law enforcement officers routinely boarded buses at scheduled stops and asked passengers for permission to search their luggage in furtherance of a drug interdiction policy. Id.,501 U.S. at 431, 111 S.Ct. 2382, 115 L.Ed.2d 389. Two officers asked to inspect the defendant's ticket and identification. Id.
The officers immediately returned the defendant's ticket and identification as unremarkable. Id. The officers did not, however, cease their questioning of the defendant. Id. Instead, the officers explained their presence as narcotics agents and requested the defendant's consent to search his luggage. Id.501 U.S. at 432, 111 S.Ct. 2382, 115 L.Ed.2d 389. The officers advised the defendant that he could refuse to consent to the search. Id.
The defendant argued that the general rules regarding consent searches should not apply "in the cramped confines of a bus." Id., 501 U.S. at 435, 111 S.Ct. 2382, 115 L.Ed.2d 389. The defendant argued that "[a] police encounter is much more intimidating in this setting * * * because police tower over a seated passenger and there is little room to move around." Id.
The defendant asserted that a "reasonable bus passenger would not have felt free to leave under the circumstances of this case because there was nowhere to go on a bus." Id.
The Supreme Court disagreed with defendant's argument. The court noted that his "movements were `confined' in a sense, but this was the natural result of his decision to take the bus; it says nothing about whether or not the police conduct at issue was coercive." Id., 501 U.S. at 436, 111 S.Ct. 2382,115 L.Ed.2d 389. The court further stated: "[W]hen the person is seated on a bus and has no desire to leave, the degree to which a reasonable person would feel that he or she could leave is not an accurate measure of the coercive effect of the encounter." Id.,501 U.S. at 435, 111 S.Ct. 2382, 115 L.Ed.2d 389.
Thus, the court held that when a defendant's "freedom of movement [is] restricted by a factor independent of police conduct," Id., 501 U.S. at 436, 111 S.Ct. 2382, 115 L.Ed.2d 389, the Mendenhall free-to-leave test does not set forth an appropriate analysis in determining whether law enforcement officers have seized an individual. Instead, the court held that when a factor independent of police conduct restricts a defendant's freedom of movement, "the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter."Bostick, 501 U.S. at 436, 111 S.Ct. 2382, 115 L.Ed.2d 389. [T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would `have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" Bostick, 501 U.S. at 437, 111 S.Ct. 2382,115 L.Ed.2d 389 (quoting Chesternut, 486 U.S. at 569, 108 S.Ct. 1975,100 L.Ed.2d 565). The court noted that "[w]here the encounter takes place is one factor, but it is not the only one."501 U.S. at 437, 111 S.Ct. 2382, 115 L.Ed.2d 389.
The Bostick court ultimately declined to decide whether aFourth Amendment seizure had occurred because the trial court did not issue express findings of fact on the issue and because the state supreme court rested its decision upon the sole factor that the encounter occurred on bus.
In contrast to Mendenhall and Bostick, in Rover the court determined that an unlawful Fourth Amendment seizure transpired between the defendant and the law enforcement officers. InRoyer, the officers: (1) retained possession of the defendant's airline ticket and identification throughout the encounter; (2) seized the defendant's luggage; and (3) did not advise the defendant that he could refuse the search. Royer,460 U.S. at 503, 103 S.Ct. 1319, 75 L.Ed.2d 229. The court noted that "by returning his ticket and driver's license, and informing him that he was free to go if he so desired, the officers might have obviated any claim that the encounter was anything but a consensual matter from start to finish." Id., 460 U.S. at 504.
In the case at bar, the trial court appears to have determined that because the encounter between appellee and the officers transpired while appellee sat in a vehicle that he could not drive home, appellee was not "free to leave." Like Bostick,
however, appellee's freedom of movement was restricted by a factor independent of the police officers' conduct. Appellee's intoxication and appellee's failure to be a properly licensed driver rendered him unable to drive his vehicle away from the officers. We do not believe that simply because the officers informed appellee that he must comply with the law, i.e., by informing appellee that he could not operate his motor vehicle while intoxicated and without valid driving privileges, that the officers displayed signs of authority that would lead a reasonable person to believe that he was not free to disregard the officers' presence or otherwise terminate the encounter.
Moreover, like the situation presented in Mendenhall, the record reveals that: (1) the officers did not seize any items of appellant's personal property; (2) the officers returned appellant's identification; and (3) the officers advised appellant that he could decline to consent to the search. UnlikeRoyer, no evidence exists that the officers retained possession of any item of appellant's personal property or that the officers did not advise appellant that he could refuse to consent to the search. Consequently, we disagree with the trial court's conclusion that the law enforcement officers unlawfully detained appellee.
Having determined that the law enforcement officers did not unlawfully detain appellee, we conclude that the trial court employed the incorrect legal standard when determining the voluntariness of appellee's consent. Because the law enforcement officers did not unlawfully detain appellee, the state did not have the burden to prove that appellee's consent was an independent act of free will. See Robinette, supra. Rather, the state's burden was to prove that the totality of the circumstances demonstrate that appellee voluntarily consented to the search. See Schneckcloth, supra.
"The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and `voluntariness is a question of fact to be determined from all the circumstances.'" Ohio v.Robinette (1996), 513 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347
(quoting Florida v. Jimeno (1991), 500 U.S. 248, 248-49,111 S.Ct. 1801, 114 L.Ed.2d 297). As the court explained inSchneckloth, 412 U.S. at 248-49, 93 S.Ct. 2041, 36 L.Ed.2d 854:
 "[W]hen the subject of a search is not in custody and the State attempts to justify the search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing voluntary consent."
See, also, Robinette, 80 Ohio St.3d at 242-43, 685 N.E.2d at 769; Rover, supra.
Generally, courts should consider the following factors when determining if a defendant voluntarily consented to a search: (1) the age of the accused; (2) the accused's education and intelligence level; (3) the lack of any advice to the accused of constitutional rights; (4) the length of questioning; and (5) the use of physical punishment. Schneckloth, 412 U.S. at 226,93 S.Ct. 2041, 36 L.Ed.2d 854. Moreover, "[i]n examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents." Id., 412 U.S. at 229,93 S.Ct. 2041, 36 L.Ed.2d 854.
In Schneckloth, the court recognized "[o]ne alternative that would go far toward proving that the subject of a search did know that he had a right to refuse consent would be to advise him of that right before eliciting his consent." Id., 412 U.S. at 231,93 S.Ct. 2041, 36 L.Ed.2d 854. "While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine non of an effective consent." Id., 412 U.S. at 227, 93 S.Ct. 2041,36 L.Ed.2d 854.
In State v. Robinette (1997), 80 Ohio St.3d 234,685 N.E.2d 762, the Ohio Supreme Court also recognized that informing an individual of his right to refuse to consent to a search would "weigh persuasively" in finding that the consent was voluntarily given. The court stated:
 "If police wish to pursue a policy of searching vehicles without probable cause or reasonably articulable facts, the police should ensure that the detainee knows that he or she is free to refuse consent despite the officer's request to search or risk that any fruits of any such search might be suppressed. While we are not mandating any bright-line test or magic words, when a police officer informs a detainee that he or she does not have to answer further questions and is free to leave, that action would weigh persuasively in favor of the voluntariness of the consent to search."
Robinette, 80 Ohio St.3d at 246 n. 6, 685 N.E.2d at 771.
We note that the trial court, in determining the voluntariness of appellee's consent, appears to have applied the rule set forth in Robinette. In Robinette, the court held:
 "1. When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure. (State v. Robinette (1995), 73 Ohio St.3d 650, 653 N.E.2d 695, paragraph one of the syllabus, modified.)
 2. Under Section 14, Article I of the Ohio Constitution, the totality-of-the-circumstances test is controlling in an unlawful detention to determine whether permission to search a vehicle is voluntary. (State v. Robinette (1995), 73 Ohio St.3d 650, 653 N.E.2d 695, paragraph two of the syllabus, vacated.)
 3. Once an individual has been unlawfully detained by law enforcement, for his or her consent to be considered an independent act of free will, the totality of the circumstances must clearly demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave. (Florida v. Royer (1983), 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229; Schneckloth v. Bustamonte (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854, followed.)"
Robinette paragraphs one through three of the syllabus.
The case at bar, however, differs from the situation present in Robinette. In Robinette, the law enforcement officer conducted a Fourth Amendment seizure of defendant, i.e., a traffic stop, and continued to detain defendant without any further reasonable suspicion of criminal activity. In the casesub judice, the record reveals that the officers did not initiate a traffic stop or detention. Rather, the officers simply approached an already parked vehicle and were not required to possess reasonable suspicion of criminal activity to further question appellee. Consequently, the presumption that appellee's consent to search is tainted by an illegal detention does not apply, and the voluntariness of appellee's consent should not be measured by whether his consent was an independent act of free will.
Thus, in light of the foregoing reasons we reverse the trial court's judgment and remand this case for further proceedings. On remand, the trial court may employ the standard used for ascertaining the voluntariness of a consent search when the individual has not been illegally detained. The trial court, noting that the officers specifically advised appellant that he could refuse to consent to the search, should examine the totality of the circumstances to determine whether appellee voluntarily consented to the search.
Accordingly, we sustain the state's first assignment of error. Our decision regarding the state's first assignment of error renders the state's remaining assignment of error moot. See App.R. 12(A)(1)(c).
 JUDGMENT ENTRY
It is ordered that the judgment be reversed and remanded. Appellant shall recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
Kline, P.J. Evans, J.: Concur in Judgment Opinion
 ________________________ Peter B. Abele, Judge
[1] We note that the trial court's findings of fact do not indicate at which point the trial court found a seizure to have occurred.
[2] The Fourth Amendment to the United States Constitution provides:
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
[3] Section 14, Article I of the Ohio Constitution provides:
 The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized.
[4] We note that approaching a vehicle that already is parked is to be distinguished from approaching a vehicle that is parked because a law enforcement officer effected a traffic stop. The former does not require reasonable suspicion, while the latter requires reasonable suspicion.