The STATE of Ohio, Appellee,

v.

JOHNSTON, Appellant.

[Cite as *State v. Johnston* (1993), 85 Ohio App.3d 475.]

Court of Appeals of Ohio,
Ross County.

No. 92 CA 1882.

Decided March 26, 1993.

*William J. Corzine III*, Chillicothe Law Director, for appellee.

*Kevin I.A. Harrell,* Ross County Assistant Public Defender, for appellant.

STEPHENSON, Judge.

This is an appeal from a judgment of conviction and sentence entered by the Chillicothe Municipal Court, finding Calvin E. Johnston, defendant below and appellant herein, guilty of driving under the influence of alcohol in violation of R.C. 4511.19(A)(3). Appellant assigns the following error:

"The trial court erred by overruling appellant's motion to suppress evidence, and thereby violated appellant's right to be free from unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 14 of the Ohio Constitution."

A review of the record reveals the following facts pertinent to this appeal. At 2:40 a.m. on January 2, 1992, Trooper Gary Allen of the Ohio State Highway Patrol was on routine patrol in Ross County, Ohio. Trooper Allen was traveling west on Eastern Avenue when he pulled into a parking lot to turn around. As Trooper Allen was heading back out onto Eastern Avenue, he saw appellant's vehicle approaching. Allen waited for appellant's vehicle to pass. Appellant's vehicle instead pulled into the parking lot next to the patrol car. The vehicles were described as being stopped with appellant's driver's side door facing

Trooper Allen's driver's side door, with the back of appellant's car to the back of the trooper's car.

Trooper Allen activated his overhead lights, stepped out of the patrol car, walked over to the vehicle and inquired of appellant, "what do you need?" At that point, Trooper Allen noticed a strong odor of alcohol emanating from appellant's vehicle. Appellant was subsequently cited for OMVI.

On January 15, 1992, appellant filed a motion to suppress "evidence of blood alcohol content and all other evidence obtained from searches and seizures of the Defendant." A hearing was held on appellant's motion on April 24, 1992, at which time appellant's counsel limited the scope of the hearing to the validity of the initial stop of appellant's vehicle. At the close of the hearing, and by entry of April 30, 1992, the court overruled appellant's motion to suppress, concluding no stop had been made. Thereupon, appellant changed his plea to no contest, was found guilty, and was sentenced accordingly. Appellant filed a timely notice of appeal.

Appellant, in his sole assignment of error, asserts that the trial court erred in overruling his suppression motion. In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. *State v. Clay* (1973), 34 Ohio St.2d 250, 63 O.O.2d 391, 298 N.E.2d 137. Accordingly, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. See *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the appropriate legal standard. See, *e.g., State v. Simmons* (Aug. 30, 1990), Washington App. No. 89CA18, unreported, 1990 WL 127065.

▆▆▆ Appellant argues that he was subject to a stop because activation of the cruiser's overhead lights would lead a reasonable person to believe the person was not free to leave. Appellee asserts that activation of the overhead lights in and of itself is insufficient to constitute a seizure of the person. The Fourth and Fourteenth Amendments to the United States Constitution, as well as Section 14, Article I of the Ohio Constitution, prohibit any governmental search or seizure, including a brief investigative stop, unless supported by an objective justification. *Terry v. Ohio* (1968), 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.E.2d 889, 904–905, 44 O.O.2d 383, 392; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, 1272–1273. In order to warrant a brief investigatory stop pursuant to *Terry*, the police officer must be able to point to specific articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. *State v. Williams* (1990), 51 Ohio St.3d 58, 60, 554 N.E.2d 108, 110–111. The propriety of an investigative stop must be viewed in light of the totality

of the circumstances. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus.

However, as stated in *Terry, supra,* 392 U.S. at 19, 88 S.Ct. at 1879, 20 L.E.2d at 905, 44 O.O.2d at 392, fn. 16:

" * * * [N]ot all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."

As this court stated in *State v. Bird* (Dec. 31, 1992), Washington App. No. 92CA2, unreported, at 6, 1992 WL 396844, at *3:

"In order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. *Florida v. Bostick* (1991), 501 U.S. ——, —— – —— [111 S.Ct. 2382, 2388–2389], 115 L.Ed.2d 389, 401–402; see, also, *United States v. Mendenhall* (1980), 446 U.S. 544, 554, [100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509]; *Williams, supra,* at 61 [554 N.E.2d at 111], fn. 2. Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place. *Bostick, supra,* [501 U.S. at ——, 111 S.Ct. at 2386, 115 L.Ed.2d] at 398, citing *Florida v. Royer* (1983), 460 U.S. 491, 497 [103 S.Ct. 1319, 1323, 75 L.Ed.2d 229, 236]. More pertinently, the mere approach and questioning of persons seated within parked vehicles does not constitute a seizure so as to require reasonable suspicion supported by specific and articulable facts. 3 LaFave, Search and Seizure (2 Ed.1987) 408–409 and 415–416, Section 9.2(b); *United States v. Castellanos* (C.A.D.C.1984), 731 F.2d 979; *United States v. Pajari* (C.A.8, 1983), 715 F.2d 1378 (no seizure in approaching parked car); see, also, *Williams, supra,* where the Ohio Supreme Court held that the Fourth Amendment was not implicated until a seizure had occurred."

Although appellant cites no authority in support of his argument on appeal, our own research reveals that several courts in other jurisdictions have held that activation of a cruiser's overhead lights converts a mere police-citizen encounter into a seizure, thus implicating the protections of the Fourth Amendment. In 3 LaFave, Search and Seizure (2 Ed.1987) 416–417, Section 9.2(h), the author states that the encounter will likely constitute a seizure where police officers use flashing lights as a show of authority. See *State v. Stroud* (1981), 30 Wash.App. 392, 634 P.2d 316; *State v. Walp* (1983), 65 Ore.App. 781, 672 P.2d 374, as cited by LaFave at fn. 269. See, also, *Ozhuwan v. State* (Alaska App.1990), 786 P.2d 918, 921.

We have, however, found no Ohio case either adopting or rejecting this position. In a subsequent case, the Court of Appeals of Oregon clarified its holding in *Walp, supra,* stating that "an officer's use of overhead lights alone does not necessarily cause an encounter to be a stop." *State v. Dubois* (1985), 75 Ore.App. 394, 398, 706 P.2d 588, 590. The court emphasized instead that in deciding whether an encounter is a stop, a court must look to the totality of the circumstances. *Id.*

■ Based upon the totality of the circumstances in the case *sub judice,* we hold the encounter between Trooper Allen and appellant did not constitute a seizure. This case is distinguishable from those cited by LaFave. In those cases, the defendant was already parked and the officer approached the defendant's parked car. In the case *sub judice,* appellant pulled into the parking lot behind the trooper and came to a stop. Trooper Allen testified as follows:

"Q. Trooper Allen, why did you believe the—that particular vehicle wanted your assistance, or had—had stopped and—in order to contact you?

"A. It was dark, 2:40 in the morning and I was sitting—I pulled up right there just to turn around. And then this vehicle pulled in next to me. So, that is when I got out of my car. And I wasn't going to sit there and let him walk up to me and—or, you know, or anything like that. It is just a regular thing for me to be sitting somewhere and someone pull up to me, and then I get out and they ask me directions or what have you. So, I get out of the car. I don't sit in the car and wait for someone to come up to me. That's what gets you killed."

Under these circumstances, there was no seizure. Activation of the overhead lights did not constitute such a show of force or authority so as to convert the encounter into a seizure. Trooper Allen merely inquired of appellant, "what do you need?" and made no show of authority. See LaFave, *supra,* at 416–417. Accordingly, appellant's sole assignment of error is overruled and the judgment is affirmed.

*Judgment affirmed.*

PETER B. ABELE, J., concurs.

GREY, J., concurs separately.

GREY, Judge, concurring.

I concur in the judgment, but concur separately because I believe our opinion here might be misconstrued to hold that a police officer's use of overhead flashing lights does not constitute a stop. Clearly it does, and it is perceived as a stop by every driver who has been distressed to see those flashing lights in the rear window.

We ought not blur this brightline test, and I think *State v. Walp* (1983), 65 Ore.App. 781, 672 P.2d 374, does just that. Since there is no case law in Ohio on this question, we should avoid making policy decisions and decide this case on the facts. I would hold that there was a stop here, but it was the citizen who stopped the policeman, and let it go at that.