Defendant-appellant, Steven Brock, appeals a decision of the Clermont County Municipal Court overruling his motion to suppress evidence.
On June 26, 1996, at approximately 9:15 p.m., the Clermont County Sheriff's Office received a report to "be on the lookout" (a "BOLO" call) for a brown 1985 Ford F-250 truck with a utility style trailer being driven by a white male wearing a light colored tee shirt. The BOLO report indicated that the driver was possibly intoxicated as the truck was travelling at a high rate of speed. The BOLO caller stated that at the time of the call, the truck was parked in a lot located at Building 700, College Hill, which is the Bella Vista Apartment complex.[1] Clermont County Sheriff's Office dispatched Deputy Doug Flamm to the scene; however, the truck was gone when he arrived.
Approximately twenty minutes later, the Clermont County Sheriff's Office received a report of a fight in the parking lot of Prince Hamlet Apartments. Sergeant Dean Doerman responded to the call. At the intersection of S.R. 125 and S.R. 132, Doerman stopped at a red light while he waited to turn northbound onto S.R. 132. While stopped at the intersection, Doerman observed a vehicle matching the description of the BOLO call travelling southbound on S.R. 132. Doerman observed two subjects in the truck. Doerman watched the truck travel through the traffic light at the intersection, turn right, and head west on S.R. 125. Doerman then proceeded to the fight scene at the Prince Hamlet Apartments, approximately one-eighth of a mile north of the intersection of S.R. 125 and S.R. 132.
Upon his arrival at the Prince Hamlet Apartments, Doerman was informed that the subjects involved in the fight had just left in a pick-up truck with a trailer which matched the description of the vehicle that was the subject of the BOLO call. Doerman stayed at the scene for approximately twenty to thirty seconds; long enough to obtain the necessary information and talk with the apartment manager, Carmella Johnson. Doerman then proceeded to the intersection of S.R. 132 and S.R. 125 and turned right onto S.R. 125 west, retracing the route which he had observed the suspected BOLO truck take just a few minutes earlier. Doerman located the truck coming to a stop in a gravel driveway located at 1704 Lindale-Nicholsville Road.
Doerman pulled into the driveway and illuminated the truck with his headlights and spotlight, but did not activate his overhead lights. Doerman observed two people exit the truck, appellant from the driver's side. Appellant walked toward the residence and at that same time, Doerman told appellant that he would like to talk to him. Appellant did not respond to Doerman and instead began to walk faster, entering the house without stopping. Doerman approached the residence and knocked on the door. Doerman's knock on the door was answered by a woman. At the same time, Doerman heard a door slam and then "scurrying in gravel." Doerman walked to the parking area with his flashlight and observed appellant attempting to climb a three foot high fence near the rear of the property. Appellant was straddling the fence and could not get over it.
When he approached appellant, Doerman noticed a mild odor of alcohol about appellant's person. Doerman also noticed appellant could not make it over the three foot high fence. Upon shining his flashlight on appellant, Doerman noted that appellant's eyes were glassy and bloodshot and that he was staggering. Doerman then led appellant back to the area where his cruiser was located. As he proceeded back past appellant's truck, Doerman noticed beer cans "in different stages of consumption in the vehicle." By that time, Sergeant Dave Gamble, an Amelia police officer, had arrived at the scene and appellant was placed in the back of Gamble's cruiser so the officers could talk with appellant.[2]
When Deputy Flamm arrived at 1704 Lindale-Nicholsville Road, appellant was already seated in Gamble's cruiser. Flamm obtained information from Doerman and then asked appellant to exit the cruiser, whereupon he noticed a strong odor of alcohol about appellant. Flamm conducted a horizontal gaze nystagmus test upon appellant.[3] Flamm also administered a portable breath test.[4] Based upon Flamm's investigation, he determined that appellant was intoxicated and placed him under arrest, charging him with driving under the influence (DUI) in violation of R.C.4511.19(A)(1). Appellant was driven to the Prince Hamlet Apartments where Carmella Johnson identified appellant as the person she had seen driving the brown truck with a trailer earlier that evening. Appellant was then taken to the police station.
On July 1, 1996, appellant entered a plea of not guilty and subsequently filed a motion to suppress evidence on the grounds that the investigating officer lacked probable cause to arrest him for DUI. Following a hearing, the trial court overruled appellant's motion to suppress. Appellant now appeals, setting forth the following assignment of error:
 THE COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS/DISMISS BECAUSE THE ARRESTING OFFICER DID NOT HAVE REASONABLE AND ARTICULABLE SUSPICION THAT DEFENDANT-APPELLANT WAS OPERATING HIS MOTOR VEHICLE IN VIOLATION OF LAW. ADDITIONALLY, THE CONTINUED DETENTION OF DEFENDANT-APPELLANT AFTER THE INITIAL STOP WAS NOT RELATED TO THE PURPOSE OF THE ORIGINAL STOP, IF THE ORIGINAL STOP WAS FOR THE PURPOSE OF INVESTIGATING THE ALLEGED INCIDENT AT THE PRINCE HAMLET APARTMENTS, AND THE CONTINUED DETENTION WAS NOT BASED ON ANY FACTS CREATING A REASONABLE SUSPICION OF SEPARATE ILLEGAL ACTIVITY. FINALLY, UNDER THE CIRCUMSTANCES BEFORE THE COURT, THERE WAS NOT SUFFICIENT PROBABLE CAUSE TO JUSTIFY THE ARREST OF DEFENDANT-APPELLANT FOR A VIOLATION OF R.C. 4511.19 (citations omitted).
In his sole assignment of error, appellant contends that the trial court erred by overruling his motion to suppress evidence because Doerman and Flamm did not have reasonable and articulable suspicion that he was operating his vehicle in violation of R.C.4511.19. Appellant contends that if the original stop was made in order to investigate the alleged incident that occurred at the Prince Hamlet Apartments, then his continued detention was not related to the purpose of the stop and was not based upon any facts creating a reasonable suspicion of separate illegal activity. Appellant also contends that the record contains insufficient probable cause to justify a DUI arrest.
An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by substantial credible evidence. Maumee v. Johnson (1993), 90 Ohio App.3d 169,171. When reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings, relies upon the trial court's ability to assess the credibility of witnesses, and independently determines "without deference to the trial court, whether the court has applied the appropriate legal standard." State v. Anderson (1995), 100 Ohio App.3d 688,691.
Fourth Amendment guarantees are not implicated in all personal encounters between police officers and citizens. Florida v. Bostick (1991), 501 U.S. 429, 434, 111 S.Ct. 2382, 2386. "An encounter which does not involve physical force or a show of authority is a consensual encounter that does not trigger Fourth Amendment scrutiny; therefore, an officer does not need reasonable suspicion merely to approach an individual in order to make reasonable inquiries of him." State v. Smith (Oct. 16, 1995), Madison App. No. CA95-03-009, unreported, at 3. Consequently, a police officers's mere approach and questioning of an individual is not a seizure which would require reasonable suspicion supported by specific and articulable facts for Fourth Amendment purposes. Id.; Bostick at 435, 111 S.Ct. at 2386; Warrensville Hts. v. Mollick (1992), 79 Ohio App.3d 494, 497; State v. Johnston (1993), 85 Ohio App.3d 475, 478.
A police officer may make an arrest for a misdemeanor such as driving under the influence of alcohol not committed in his presence in certain situations, including "where the officer has probable cause to believe that the suspect was operating a motor vehicle while under the influence of alcohol or drugs." State v. Henderson (1990), 51 Ohio St.3d 54, 56. See, also, Oregon v. Szakovits (1972), 32 Ohio St.2d 271, 274. A warrantless arrest is constitutionally valid if, at the time of the arrest, the facts and circumstances within the officer's knowledge of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that an individual had committed an offense. Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223,225; City of Hamilton v. Crowe (Nov. 9, 1992), Butler App. No. CA92-05-081, unreported. A court must employ a "totality of the circumstances" test when determining whether a particular encounter constitutes a seizure. State v. Bobo (1988), 37 Ohio St.3d 177,178, certiorari denied (1988), 488 U.S. 910,109 S.Ct. 264.
Based upon the totality of the circumstances, we find that Doerman's mere approach of appellant was not a stop or seizure which would trigger Fourth Amendment scrutiny and require reasonable suspicion. Johnston at 478; Smith, Madison App. No. CA95-03-009. Doerman did not pull appellant's vehicle over or order appellant from the vehicle, nor did he activate his overhead lights when he arived at the residence. Rather, appellant's vehicle was parked and appellant was already exiting it when Doerman began to approach appellant. The record indicates that initially Doerman approached appellant in order to question him about the Prince Hamlet Apartments incident. Given the totality of the evening's events, Doerman did not need reasonable articulable suspicion that appellant was violating a law or engaging in criminal activity in order to simply question him.
However, the encounter between Doerman and appellant escalated into reasonable suspicion for an investigative detention and probable cause for an arrest based upon the information obtained by Doerman while at the residence. First, appellant attempted to flee the scene to avoid talking with Doerman. Second, during his conversation with appellant at the fence, Doerman noticed that appellant had bloodshot and glassy eyes, a mild odor of alcohol about his person, a staggering gait, and was unable to negotiate a three foot high fence. Third, while escorting appellant to the police cruiser, Doerman noticed several opened beer cans in appellant's truck. Finally, Doerman had observed appellant driving the truck just minutes before and had watched appellant exit from the driver's side of the truck.
Based upon Doerman's own personal observations, Doerman established the requisite reasonable suspicion necessary to detain appellant until officer Flamm arrived to conduct field sobriety tests. Smith, Madison App. No. CA95-03-009. Moreover, based upon the totality of the circumstances, including the information obtained by Doerman during his initial encounter with appellant, and the subsequent information obtained during field sobriety tests, Deputy Flamm had probable cause to arrest appellant for DUI. See, for e.g., Willowick v. Sable (Dec. 12, 1997), Lake App. No. 96-L-189, unreported; State v. Robinson (Sept. 8, 1997), Butler App. No. CA97-04-093, unreported; Smith, Madison App. No. CA95-03-009. Appellant's assignment of error is overruled.
Judgment affirmed.
WALSH and POWELL, JJ., concur.
[1] The registration number of the BOLO vehicle, P627AB, was subsequently dispatched over the officers' radios.
[2] At this time, the officers verified the registration number on appellant's truck was the same number that had been broadcast earlier in the BOLO report. Additionally, appellant was wearing a white tee shirt; the BOLO report stated that the driver was wearing a "light colored" tee shirt.
[3] The record indicates that during the horizontal gaze nystagmus test, Flamm observed six out of six clues which indicate that an individual is possibly under the influence of alcohol.
[4] The results of the portable breath test registered a concentration of .15 grams by weight of alcohol in appellant's breath.