OPINION AND JUDGMENT ENTRY
This is an appeal from an October 9, 1998 judgment of the Oregon Municipal Court that appellant, Kevin R. Macritchie, is guilty of driving under the influence of alcohol, a violation of R.C. 4511.19(A)(3). Appellant has presented two assignments of error that read:
"Assignment of Error No. 1:
 The stop and arrest of the Appellant was a violation of his Fourth Amendment right pursuant to the United States Constitution because the stop was not based on a reasonable and articulable suspicion that Appellant was engaged in criminal activity.
"Assignment of Error No. 2:
 The arrest of the Appellant was defective because it was not based on facts which would give the officer probable cause at the time of the arrest of the Appellant."
Before we address the arguments presented relating to these two assignments of error, we first review the facts and procedure in this case.
On July 27, 1998, charges were filed against appellant in the Oregon Municipal Court for driving under the influence of alcohol in violation of R.C. 4511.19(A)(1) and (3). Appellant entered not guilty pleas and filed a motion to suppress. In support of his motion to suppress, he argued that the officer who stopped him had no reasonable, articulable suspicion that he was engaged in criminal activity, so the traffic stop was constitutionally invalid. He also argued that even after the stop, the officer did not have probable cause to place him under arrest.
The trial court held a hearing on the motion to suppress. At the hearing, the officer who placed appellant under arrest was the only witness to testify.
The officer was on patrol in the Maumee Bay State Park during the evening of July 25, 1998. He said:
 "The camp office called and advised that they had a person at the camp office. They detected an odor of alcohol. It was past the curfew for visitors, they had an expired visitors pass. And she advised the person that the permit was expired and the person continued to go into the campground and she radioed us, myself and Officer Ferguson, which was in the campground.
"* * *
 "She described the vehicle, it was cooper [sic] colored convertible, one person, one male in it, white male."
The officer said he started driving toward the camp office. He saw the vehicle described to him in the call, turned around and followed the vehicle. He turned on his cruiser lights, but the driver of the copper colored vehicle did not stop right away. Eventually the car did stop, and the officer got out of his cruiser.
As the officer approached the copper colored vehicle, he smelled a strong odor of alcohol. He testified that the odor was coming from the breath of the man driving the convertible, appellant. He said appellant was "very slow in retrieving his driver's license."
A second officer arrived at the scene of the stop, and the first officer asked the second officer to do field sobriety tests on appellant. The first officer watched appellant do two field sobriety tests — the horizontal nystagmus gaze test and the one-leg stand. During the remainder of the time, the first officer was in his cruiser "running" a check on appellant's driver's license. He testified appellant was unsteady and he stumbled when he got out of the convertible. Appellant was not able to stand on one leg for more than three seconds. During those three seconds he had his hands extended to catch his balance and was swaying back and forth. The officer then arrested appellant for driving under the influence of alcohol.
Appellant argued in the trial court that the testimony of the officer was insufficient to show a reasonable articulable suspicion that appellant was engaged in criminal activity to support a valid traffic stop. Appellant said that the officer's testimony that he received a call from the camp office alerting him to look for appellant's car was not sufficient to show the "employment status" of the person calling. Appellant said the information from the call was therefore unreliable, because it was not shown the caller was a police officer. Furthermore, appellant said the officer did not himself observe any problems with appellant's driving, and so had no basis independent from the call to stop appellant's car.
The court rejected appellant's arguments and denied his motion to suppress. At the hearing, the court explained:
 "We have an officer testified who has, I suppose dual responsibilities his primary responsibility is safety in the park, was I understand it, and treatment of visitors in the park, public relations officer and traffic officer and all sorts of other things. Interesting element here is he said it was a call from the park office about a permit violation and there was a description of the car given, who's driving it, and the officer states that he saw a car like that, stops the vehicle, upon stopping the vehicle had the (Inaudible) of alcoholic beverage odor and other matters and made the arrest. I think that is reasonable suspicion to stop the vehicle.
 "An officer in the park very similar to one who gets a call that somebody's on the golf course with a motorcycle or somebody's doing something peculiar in the other area of the park and they get the call.
 "I think there's proper cause for the stop and proper cause for the rest and the Motion is denied."
Appellant argues that the officer who stopped him did not have any reasonable, articulable suspicion that he was engaged in any criminal activity, and that the initial stop of his vehicle was therefore in violation of his constitutional rights. Appellant argues that the officer's testimony failed to show that the initial call placed to the officer to report appellant as entering the park on an expired visitor's pass and as smelling of alcohol was from a reliable source. Furthermore, the officer did not have any independent observations to corroborate the implication that appellant was driving a vehicle while under the influence of alcohol.
Appellee responds that the officer did have a reasonable, articulable suspicion that appellant was driving while under the influence of alcohol when he made the stop. Appellee says the officer's testimony that the radio dispatch came from the camp office was sufficient to show that the officer knew the person who made the call and could depend upon her reliability.
This court has previously noted:
"`An appellate court reviews whether substantial evidence supports a trial court's decision on a motion to suppress. Maumee v. Johnson
(1993), 90 Ohio App.3d 169, 171. The trial court acts as the trier of fact and is in the best position to resolve questions of fact and determine witness credibility. State v. Johnston
(1993), 85 Ohio App.3d 475, 477. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger
(1993), 86 Ohio App.3d 592, 594.' State v. Jenkins (Mar. 31, 1998), Lucas App. No. L-97-1303, unreported. "At the same time, this court will independently decide questions of law. State v. Vorous (Feb. 22, 1994), Stark App. No.CA-9414, unreported." State v. Baumgartner (June 11, 1999), Lucas App. No. L-98-1282, unreported.
In addition, this court has said:
 "In a series of cases, the United States Supreme Court has set forth the constitutional requirements and safeguards of the Fourth Amendment in regard to an investigative stop by a police officer. Unless there is an `articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or the occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver * * * are unreasonable under the Fourth Amendment.' Delaware v. Prouse(1979), 440 U.S. 648, 663. A reasonable suspicion must be based on specific and articulable facts which justify the limited search. Terry v. Ohio(1968), 392 U.S. 1, 20. Reasonable suspicion need not be based only on the officer's personal observations. Adams v. Williams (1972), 407 U.S. 143, 147.
 "Reasonable suspicion may also be founded on information provided by persons outside the police department. In Adams, 407 U.S. at 147, the court held that informants' tips, while they vary greatly in their value and reliability, may in certain cases produce reasonable suspicion. The court noted that `* * * one simple rule will not cover every situation.' Id. Each case must be decided on its own unique circumstances and any attendant indicia of reliability. Id. In Adams, the tip was received from a known informant and details of the tip could be immediately verified. In finding reasonable suspicion under these circumstances, the court noted that the facts presented a stronger case than might have resulted in the case of an anonymous telephone tip. Id.
at 146.
 "In Illinois v. Gates (1983), 462 U.S. 213, the Court adopted a totality of the circumstances approach for evaluating anonymous tips in the probable cause context. Although in Gates, the Court abandoned the two-pronged test of Aguilar v. Texas (1964), 378 U.S. 108, and Spinelli v. United States (1969), 393 U.S. 410, the court emphasized that the factors previously determinative under Aguilar were still highly relevant in a totality of the circumstances approach. These factors are the informant's veracity and reliability on one hand and his basis of knowledge on the other.
 "After the Supreme Court's decision in Gates, the question remained as to what kind of indicia of reliability an anonymous tip must possess to be constitutionally adequate. Specifically, it was unclear whether the corroboration of neutral or innocent tip details, such as a description of the suspect or his car, met the reasonable suspicion standard. The question was answered in Alabama v. White
(1990), 496 U.S. 325.
 "In White, the police received an anonymous telephone tip identifying the defendant and stating that she would be leaving her apartment at a certain time to deliver cocaine to a nearby motel. The caller also included a description of the defendant's car. The White Court stated that this tip, standing alone, lacked sufficient indicia of reliability and, thus, could not establish reasonable suspicion for an investigatory stop without `something more.' Id. at 329.
 "A tip which standing alone would lack sufficient indicia of reliability may establish reasonable suspicion to make an investigatory stop if it is sufficiently corroborated through independent police work. However, the simple corroboration of neutral details describing the suspect or other conditions existing at the time of the tip, without more, will not produce reasonable suspicion for an investigatory stop. Id. at 332. Reasonable suspicion is dependent upon both the content of the information provided and its degree of reliability. Id.
at 330-31. Both the quantity of information available and its quality are examined under a totality of the circumstances approach. Id. at 330." State v. Tenney (May 2, 1997), Lucas App. No. L-96-113, unreported.
Applying these same standards in this case, we conclude that there was substantial evidence to support the trial court's factual findings in this case, and the trial court did not err when it found, as a matter of law, that the initial stop of appellant did not violate his constitutional rights.
The officer's testimony, taken in context, shows that he received a radio dispatch from a park employee. The dispatch contained detailed, reliable information, including the information that camp personnel spoke with the driver of the car and told him his visitor's pass was expired, that the driver smelled of alcohol, that the driver entered the park even after he was told his visitor's pass was no longer valid, that the driver was a white male, that the driver was the only occupant of the car, and that the car was a copper colored convertible. The officer could reasonably rely upon that dispatch to form a reasonable, articulable suspicion that appellant was driving under the influence of alcohol. Appellant's first assignment of error is not well-taken.
In support of his second assignment of error, appellant argues that even if the initial stop was valid, the officer did not have probable cause to arrest him for driving under the influence of alcohol. Appellant says the officer did not see him driving erratically and did not personally conduct field sobriety test on him. Appellant argues, therefore, that the officer did not have enough information to support a finding of probable cause for arrest.
We agree with the trial court that the officer did have enough information to have probable cause to arrest appellant for driving under the influence of alcohol. The officer smelled a strong odor of alcohol from appellant's breath when he walked up to appellant's car after the stop. The officer saw that appellant was unsteady on his feet when he got out of his car to perform sobriety tests. The officer saw how appellant performed on two field sobriety tests: the nystagmus gaze test and the one-leg stand. The officer testified that he has had lots of experience with identifying and arresting drunk drivers, and that based upon his observations of appellant, he arrested appellant for driving under the influence of alcohol. Appellant's second assignment of error is not well-taken.
The judgment of the Oregon Municipal Court is affirmed. Appellant is ordered to pay the court costs of this appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
JUDGMENT AFFIRMED
Peter M. Handwork, P.J., James R. Sherck, J., and Richard W. Knepper, J., CONCUR.