DECISION AND JUDGMENT ENTRY
Richard Cookson appeals his convictions in the Marietta Municipal Court for operating a motor vehicle under the influence and driving under suspension. He assigns the following error:
 AN ANONYMOUS TIP, STANDING ALONE, LACKS SUFFICIENT INDICIA OF RELIABILITY NECESSARY TO ESTABLISH REASONABLE SUSPICION FOR A TERRY INVESTIGATORY STOP, THEREFORE THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED DURING THE UNLAWFUL TRAFFIC STOP OF THE APPELLANT, WHICH WAS A DIRECT VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 14 OF THE OHIO CONSTITUTION. [Suppression Transcript (9/5/2000), Journal Entry, (9/14/2000)]
 Finding this assignment of error to be meritorious in part, we reverse the trial court's judgment.
In June 2000, a deputy sheriff arrested appellant and charged him with driving under the influence of alcohol and driving under suspension. After the appellant filed a motion to suppress, the court conducted a hearing where Deputy Scott Parks was the sole witness.
Deputy Parks testified that he was on duty on June 24, 2000. Shortly after 11:30 p.m., a dispatcher called Deputy Parks to advise him that they received a citizen phone call concerning a blue van that was "driving erratically" in the area of Go-Mart. Parks did not indicate that there were any more details in the dispatch. About fifteen to twenty seconds after receiving the dispatch, Deputy Parks observed a blue van in that area traveling south on County Road 344. Deputy Parks observed the van for about 300 yards to a quarter of a mile. The van made a right turn and parked in the Ryan's Steakhouse parking lot. Both Ryan's and the nearby Dairy Queen appeared to be closed and there were no other vehicles in the parking lot. Deputy Parks parked directly behind the van without activating his lights.
Deputy Parks walked up to the driver's side of the van. The window was down and Deputy Parks saw that appellant, who he recognized from prior contacts at the county jail, was driving the vehicle. As Deputy Parks approached the van, appellant turned and looked at him. This afforded Parks the opportunity to notice that appellant's eyes appeared bloodshot and to smell alcohol coming out of the window.
Deputy Parks asked appellant how he was doing, informed appellant that a complaint had been made about his driving, and asked appellant for his license, registration and proof of insurance. Appellant initially stated that he had a West Virginia driver's license. When Deputy Parks asked for the information, appellant admitted that he did not have a West Virginia license and his Ohio driver's license was suspended. Deputy Parks testified that he did not think appellant provided his registration or insurance card either. As Deputy Parks continued speaking to appellant, he noticed that appellant's speech was slurred and he sounded like he'd been drinking.
On cross-examination, Deputy Parks testified that he did not know if the tape of the phone call still exists. Deputy Parks stated that he thinks the person who placed the phone call also provided a license number for the blue van, but two of the numbers were either reversed or missing. Deputy Parks acknowledged that this information was not in his written narrative. He could not recall seeing any vehicles traveling behind appellant's van.
Deputy Parks testified that he thought appellant told him he was coming from band practice and going to pick somebody up from work, but he was not certain. Deputy Parks acknowledged that appellant likely signaled before he turned into the Ryan's parking lot and he did not personally observe any erratic driving, excessive speed, or defects on the van. Deputy Parks stated that he stopped and talked to appellant solely because of the tip, but that he did not conduct a traffic stop. Deputy Parks testified that he turned his vehicle's overhead lights on only after he had appellant out of the car doing field sobriety tests. Deputy Parks acknowledged that he pulled in lengthwise behind appellant and that he would have had to move his car for appellant to leave. Deputy Parks also admitted that he never advised appellant he could leave.
Following this testimony, the trial court denied appellant's motion. The court found that Deputy Parks did not initiate a traffic stop or cause appellant to interrupt his travel. The court stated that appellant parked his vehicle on his own initiative and placed himself in the position of being approachable by a pedestrian. Appellant could have asked Deputy Parks to move his patrol car so he could exit but did not. The court concluded that appellant's Fourth Amendment constitutional rights were not implicated by the initial contact with Deputy Parks.
After a jury found appellant guilty of both offenses, this appeal followed.
In his sole assignment of error, appellant contends that the court erred in denying his motion to suppress because an investigatory stop based solely on an anonymous tip is unlawful. In its brief, the state contends that, because appellant's vehicle was parked, the encounter was consensual and not an investigatory stop. Therefore, appellant'sFourth Amendment rights were not implicated.
In a motion to suppress, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. See, e.g., State v. Mills (1992),62 Ohio St.3d 357, 366, citing State v. Fanning (1982), 1 Ohio St.3d 19,20; see, also, State v. Williams (1993), 86 Ohio App.3d 37, 41. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.State v. Guysinger (1993), 86 Ohio App.3d 582, 594. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Ornelas v. United States (1996), 517 U.S. 690,134 L.Ed.2d 911, 116 S.Ct. 1657; State v. Klein (1991), 73 Ohio App.3d 486,488; Williams; _Guysinger.
First, we must determine whether appellant was "stopped" by Deputy Parks. The Fourth Amendment to the United States Constitution protects against unreasonable governmental intrusions into areas where legitimate expectations of privacy exist. United States v. Chadwick (1977),433 U.S. 1, 53 L.Ed.2d 538, 97 S.Ct. 2476. The text of theFourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" This "right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs." Terryv. Ohio (1968), 392 U.S. 1, 9, 20 L.Ed.2d 889, 88 S.Ct. 1868. However, "not all personal intercourse between policemen and citizens involves `seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a `seizure' has occurred." Id., 392 U.S. at 19, fn. 16.
Something less than physical restraint may constitute a seizure. "[A] person has been `seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."United States v. Mendenhall (1980), 446 U.S. 544, 554, 64 L.Ed.2d 497,100 S.Ct. 1870. The Mendenhall court explained at 553-554:
 We adhere to the view that a person is `seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards. The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but to `prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.' United States v. Martinez-Fuerte (1976), 428 U.S. 543, 554, 49 L.Ed.2d 1116, 96 S.Ct. 3074. As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.
 Thus, to constitute a seizure for Fourth Amendment purposes, there must be either the application of physical force or submission by the subject to an officer's show of authority. California v. Hodari D. (1991), 499 U.S. 621, 113 L.Ed.2d 690, 111 S.Ct. 1547. A police officer does not violate the Fourth Amendment by merely approaching an individual and asking him if he is willing to answer some questions or by putting questions to him if the person is willing to listen. Florida v. Royer (1983), 460 U.S. 491, 497, 75 L.Ed.2d 229, 103 S.Ct. 1319. Such approaches do not require that a police officer have a reasonable suspicion of criminal activity before making the approach. State v. Johnston (1993), 85 Ohio App.3d 475. Encounters outside the Fourth Amendment become seizures only when the police demonstrate a sufficient show of authority such that a reasonable person would conclude that he must comply. United States v. Pajari
(C.A. 8, 1983), 715 F.2d 1378, 1381.
Based on the testimony of Trooper Parks, we conclude that appellant was "seized" for Fourth Amendment purposes. The state correctly argues that if a vehicle is already stopped or parked, a police approach and encounter with the stationary vehicle and its driver does not implicate the Fourth Amendment. See State v. Bennett (June 21, 2000), Ross App. No. 99CA2509, unreported. The rationale behind this holding is that a reasonable person who stops of his own volition would not feel that he was being restrained and would be free to walk or drive away without speaking to the officer. As the state correctly notes, appellant parked his car in the lot on his own initiative; Deputy Parks had not activated his lights nor indicated to appellant that he was required to stop.
However, Deputy Parks also testified that the parking lot was empty, but he parked lengthwise directly behind appellant's vehicle so that appellant could not exit the parking lot without asking Deputy Parks to move his patrol car. Under the totality of the circumstances, this action by Deputy Parks constituted such a show of force that a reasonable person in appellant's position would not feel he was free to leave at that point. See State v. Inabnitt (1991), 76 Ohio App.3d 586, 589-590 (holding that a seizure occurred when an officer used his vehicle to "block in" the defendant's vehicle in a parking lot); see, also, State v. Lopez
(Sept. 28, 1994), Greene App. No. 94CA21, unreported, at fn. 6. In fact, a reasonable person would conclude that Deputy Parks parked in such a manner so as to ensure that the vehicle's occupant could not leave the area. Therefore, we conclude that an investigative seizure of appellant occurred when Deputy Parks prevented appellant from leaving the parking lot by blocking his car with the cruiser.
The trial court erroneously found that the contact between Deputy Parks and the appellant did not amount to a stop, but rather was a consensual encounter. Accordingly, it did not fully address the issue of whether the stop was reasonable within the meaning of the Fourth Amendment's protection against unreasonable searches and seizures. Since the trial court did not dispositively address this issue, it would be improper for a reviewing court to usurp the trial court's role and proceed on the merits of a question it did not address. See, by way of analogy, Murphyv. Reynoldsburg (1992), 65 Ohio St.3d 356, 360.
Therefore, we reverse the trial court's judgment of conviction and its ruling on the motion to suppress. This matter is remanded to the court for further proceedings consistent with opinion.
It is ordered that the JUDGMENT BE REVERSED AND CAUSE REMANDED and that the Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
Abele, P.J. Kline, J., Concur in Judgment and Opinion