OPINION
Plaintiff-appellant, the state of Ohio, appeals the decision of the Clermont County Court of Common Pleas granting the suppression motion of defendant-appellee, Gary T. Brown. Since we conclude that Brown was not subjected to an unconstitutional search and seizure, we reverse the decision of the trial court.
Officer John Pavia of the Union Township Police Department observed a vehicle parked in the middle of a large parking lot in front of a Sofa Express store on Eastgate Square Drive. It was approximately 11:08 p.m. Sofa Express was closed to business. There were no other cars in the parking lot.
Officer Pavia activated his cruiser's overhead lights and parked one car-length behind the vehicle. Officer Pavia exited his cruiser and approached the vehicle. He observed that there was a man sitting in the vehicle, on the passenger's side. He asked the vehicle's occupant to produce identification.
Brown provided his driver's license to Officer Pavia. Using Brown's license, Officer Pavia did a record check which revealed Brown did not have any outstanding warrants. Officer Pavia asked Brown what he was doing in the parking lot. Brown responded that he was "fixing wires" in his vehicle. Officer Pavia then asked Brown whether he had anything illegal in his vehicle. Brown failed to respond to the question. Officer Pavia repeated his question. This time, Brown denied having anything illegal.
Officer Pavia next asked Brown for permission to search the vehicle. Brown consented. Officer Pavia requested that Brown exit his vehicle and stand on the passenger's side. Brown complied. Before beginning the search, Officer Pavia asked Brown whether there was anything illegal in the vehicle of which he should be aware. Brown replied that there was ammunition for a nine-millimeter handgun in the glove compartment. Officer Pavia asked if there was a firearm in the car. Brown stated that there was a gun under the vehicle's front passenger's seat. Brown told Officer Pavia that the gun might be loaded.
Officer Pavia conducted a safety frisk of Brown and placed him in the back of his cruiser. Upon searching the vehicle, Officer Pavia found a loaded nine-millimeter handgun under the passenger's seat of the vehicle. Officer Pavia also located additional ammunition in the glove compartment.
Brown was charged with one count of carrying a concealed weapon. Brown moved the trial court to suppress the evidence Officer Pavia obtained against him on the basis that it was acquired during an unconstitutional search and seizure. After conducting a hearing on the matter, the trial court granted Brown's motion.
In a lengthy written decision, the trial court reasoned that the encounter between Officer Pavia and Brown was a coercive encounter, noting that the "primary fact to be considered is that Officer Pavia turned on his rotating overhead lights as he pulled behind Brown's car in the parking lot." The trial court concluded that Officer Pavia probably used his overhead lights "for the effect it would have on Brown" rather than for safety reasons. The trial court hypothecated that Officer Pavia could have used a combination of headlights and alley lights, or he could have used his "flashers." The trial court opined that these other means "do not convey the same message as overhead lights."
The trial court further found that the encounter was not consensual because Pavia did not exchange pleasantries with Brown, and he persisted in asking an "incriminating question." Officer Pavia's repeated inquiry as to whether there was anything illegal in the vehicle led the trial court to conclude that a reasonable person would believe he was not free to leave. Finally, the trial court noted that Officer Pavia did not advise Brown that he was free to leave or that he was not required to consent to a search of the vehicle.
The state appeals the decision of the trial court and raises the following assignment of error for review:
 THE TRIAL COURT ERRED IN GRANTING THE MOTION TO SUPPRESS.
The state argues that the trial court erred by granting Brown's suppression motion. The state asserts that the trial court, in reaching its conclusion, inappropriately relied upon its interpretation of Officer Pavia's subjective intentions to assess whether the encounter was consensual. We agree.
In reviewing a trial court's decision on a motion to suppress, an appellate court must accept the trial court's factual findings if they are supported by competent, credible evidence. State v. Anderson (1995),100 Ohio App.3d 688, 691. However, an appellate court independently determines without deference to the trial court whether the court applied the appropriate legal standard to the facts. Id.
The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. See, e.g., UnitedStates v. Hensley (1985), 469 U.S. 221, 226, 105 S.Ct. 675, 678. However, not all personal encounters between law enforcement officials and citizens are "seizures" that implicate Fourth Amendment guarantees.Florida v. Bostick (1991), 501 U.S. 429, 434, 111 S.Ct. 2382, 2386. Even when officers lack reasonable suspicion of criminal activity, they may generally approach an individual and ask questions, Florida v. Rodriguez
(1984), 460 U.S. 491, 501, 105 S.Ct. 308, 310-311, ask to examine identification, INS v. Delgado (1984), 466 U.S. 210, 216,104 S.Ct. 1758, 1762, and request consent to search luggage. Bostick,501 U.S. at 434, 111 S.Ct. at 2386. The inquiry used to determine whether a particular encounter is a seizure is whether, taking into account all of the surrounding circumstances, a reasonable person would feel free to decline the officer's request or terminate the encounter. Bostick,501 U.S. at 436-37, 111 S.Ct. at 2387. As long as a reasonable person would feel free to disregard the officer, the encounter is consensual and no reasonable suspicion is required. Bostick, 501 U.S. at 434,111 S.Ct. at 2386.
A person is "seized" only when his freedom of movement is restrained by physical force or a show of authority. United States v. Mendenhall
(1980), 446 U.S. 553, 100 S.Ct. 1877. Examples of circumstances that indicate a seizure include "the threatening display of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Id. at 554, 100 S.Ct. at 1877.
These same principles equally apply to citizens in motor vehicles. Some encounters between police officers and citizens in vehicles are purely consensual and do not implicate Fourth Amendment rights. See,e.g., State v. Johnston (1993), 85 Ohio App.3d 475, 478. Generally, an officer's approach and questioning of the occupants of a parked vehicle does not constitute a seizure and does not require reasonable, articulable suspicion of criminal activity. State v. Boys (1998),128 Ohio App.3d 640, 642; City of Hamilton v. Stewart (Mar. 5, 2001), Butler App. No. CA2000-07-148, unreported; State v. Robinson (Sept. 8, 1997), Warren App. No. CA97-04-093, unreported.
A police officer does not necessarily seize the occupants of a parked vehicle through the activation of a police cruiser's overhead lights.Johnston at 479; State v. Lunce (May 21, 2001), Butler App. No. CA2000-10-209, unreported. Nor does an officer encroach upon any right secured by the Fourth Amendment by using a flashlight to illuminate the interior of a vehicle. Texas v. Brown (1983), 460 U.S. 730, 739-740,103 S.Ct. 1535, 542; State v. Schwab (Jan. 29, 2001), Clermont App. No. CA2000-07-055, unreported. An officer does not necessarily seize the occupants of a parked car by shining a spotlight into the car, State v.Schwab (Jan. 29, 2001), Clermont App. No. CA2000-07-055, unreported, or by parking a police cruiser perpendicular to the car. State v. King
(Aug. 23, 1999), Clermont App. No. CA98-12-123, unreported. As with any encounter between an officer and a citizen, a court must look to the totality of the circumstances to determine whether a police-citizen encounter involving motor vehicles is consensual or a seizure. Id.
Based upon the totality of the circumstances in this case, we conclude that Officer Pavia's initial contact with appellee was a consensual encounter, not a stop or seizure that implicates Fourth Amendment scrutiny and requires reasonable suspicion. The record demonstrates that Brown's vehicle was parked in a parking lot of a business establishment at 11:08 p.m. when the business was no longer open. Officer Pavia did not stop Brown's vehicle, as it was already parked and stationary. Officer Pavia merely requested identification from Brown and inquired as to his purpose for sitting in the parking lot. The fact that Officer Pavia did not exchange "social pleasantries" with Brown does not convert the encounter into a seizure. The Fourth Amendment does not require officers to be pleasant or mannerly; it prevents unreasonable seizures resulting from coercive encounters.
There is no competent credible evidence in the record to support the trial court's conclusion that the encounter was coercive. There is nothing in the record suggesting that Officer Pavia used language or a tone that conveyed that he would compel compliance with his request. On the contrary, Officer Pavia testified that he spoke with Brown in a normal conversational tone. Officer Pavia's question regarding contraband does not make the encounter coercive. See Bostick,501 U.S. at 438, 111 S.Ct. at 2388 (noting the long-standing proposition that "police officers can approach individuals as to whom they have no reasonable suspicion and ask them potentially incriminating questions"); U.S. v.Kim (C.A.3, 1994), 27 F.3d 947, 953. Nor does the fact that Officer Pavia asked the question again when Brown failed to respond. Mere repetition of a permissible question to which there has been no response cannot transform a consensual encounter into a seizure without some evidence of coercion.
Officer Pavia's use of his overhead lights is not enough of a show of force or authority to convert the encounter into a seizure. Officer Pavia testified that he parked his cruiser one car-length behind Brown's vehicle. The cruiser did not block Brown's egress from the parking lot. Officer Pavia testified that his use of overhead lights was a safety precaution so that other vehicles would see him. Although the trial court apparently did not believe that the officer needed to use the lights for safety, there is no evidence in the record to lead to the conclusion that Officer Pavia activated his lights in order to "seize" Brown. The fact that the officer used his overhead lights in the parking lot adjacent to a store closed for business at 11:08 p.m. prior to approaching a lone occupied vehicle appears not only reasonable, but also necessary. Even if Officer Pavia had the subjective intent to use the overhead lights "to have an effect" upon Brown, under the circumstances of this case, their use would not lead a reasonable person to believe that he was unable to decline the officer's request or terminate the encounter.
Therefore, we conclude that there was no initial stop or seizure in the present case that would require a reasonable suspicion of criminal activity or probable cause. Brown was not seized within the meaning of the Fourth Amendment when Officer Pavia approached him in a parked car and asked questions, even though Officer Pavia had activated his overhead lights. Absent any evidence that Officer Pavia used some form of coercion or duress to force compliance with his request, Brown's consent to the search of his vehicle was freely and voluntarily given. See Statev. Arrington (1994), 96 Ohio App.3d 375, 377.
Accordingly, on the basis of the foregoing, appellant's assignment of error is sustained. The judgment of the trial court is reversed and this cause remanded to the trial court for proceedings according to law and consistent with this opinion.
YOUNG, P.J., and WALSH, J., concur.