OPINION
{¶ 1} Appellant, Jonathan L. Brown, appeals the August 3, 2001 judgment entry of the Lake County Court of Common Pleas.
 {¶ 2} Appellant was indicted on January 26, 2001 with one count of possession of cocaine, a felony of the fifth degree, in violation of R.C.2925.11. Appellant waived his right to be present at the arraignment on February 2, 2001, and entered a plea of not guilty to the charge. Thereafter, on April 16, 2001, he filed a motion to suppress the evidence obtained by the Painesville Police Department pursuant to an unlawful search and seizure. The state filed a brief in opposition to appellant's motion to suppress on May 2, 2001. A suppression hearing was held on May 4, 2001.
 {¶ 3} Officer Eric Kacvinsky ("Officer Kacvinsky") of the Painesville Police Department testified at the hearing. He and Officer Anthony Giza ("Officer Giza"), also of the Painesville Police Department, were on duty and were dispatched to the Argonne Arms Apartment Complex on November 22, 2000. The specific dispatch was that there were drug dealers, gambling, and drug use taking place in the hallway of Building I. He indicated that numerous search warrants had been issued previously for Building I at that time due to the amount of drug activity that occurred there. However, there was no search warrant for this occasion.
 {¶ 4} Officer Giza arrived at Building I within three minutes of being dispatched, and he entered the building a few seconds before Officer Kacvinsky. When Officer Giza saw appellant in the common area of the hallway, he "had his * * * right hand behind his back, as if he was concealing something." As a result, Officer Giza testified that he was concerned so he told appellant to show his hands, but appellant kept walking toward Officer Giza with "his gaze just straight ahead." Thereafter, Officer Kacvinsky came around the corner, drew his weapon, and told appellant to put his hands up on the wall. He testified that he drew his pistol "in fear of safety of [himself] and Officer Giza and other residents and visitors of the complex and building." Finally, appellant complied. Once appellant was against the wall, Officer Kacvinsky conducted a pat down search of him to make sure he did not have any weapons. Officer Kacvinsky did not discover any weapons on appellant, but he stated that appellant had a very large wad of bills fall out of his pockets. Meanwhile, Officer Giza ran a LEADS check of appellant.
 {¶ 5} The testimony at the suppression hearing revealed that Officer Kacvinsky is six feet five inches tall whereas appellant is about six feet one. Further, Officer Kacvinsky and appellant were standing in the stairwell and appellant was a couple of steps below him. Once Officer Kacvinsky determined that there were no outstanding warrants for appellant, he "went to put [the money] back in [appellant's] jacket pocket." As he got closer to the open pocket located on the side of appellant's jacket, he noticed a container in the top pocket of the jacket. He related that the container was "kind of clear straight through, and [he] looked down to see what looked like crack cocaine." Officer Kacvinsky testified that the off-white color of small rocks was "immediately apparent to [him] * * * [as] crack cocaine."
 {¶ 6} Officer Kacvinsky explained that the container "wasn't all the way down in the pocket, it was pretty much in the middle of the pocket holding the pocket open so [he] could see down into it." Upon recognizing the substance as crack cocaine, Officer Kacvinsky immediately seized it. Officer Kacvinsky revealed that he was very familiar with crack cocaine as he confiscates it at least five to ten times a week.
 {¶ 7} Appellant also testified at the suppression hearing. He related that when Officer Giza first told him to show his hands, he was pulling his pants up because he had on loose pants without a belt and they kept falling down. According to appellant, Officer Giza never asked appellant to put his hands up, and Officer Kacvinsky already had his gun drawn. Appellant also stated that Officer Giza conducted the first pat down. Officer Kacvinsky pulled appellant back and told appellant that he wanted to make sure appellant was clean, so he patted appellant down again.
 {¶ 8} On May 8, 2001, the trial court denied appellant's motion to suppress. On that same date, appellant withdrew his not guilty plea and entered a plea of no contest to the charge. Appellant was found guilty of possession of cocaine, and sentencing was deferred.
 {¶ 9} A sentencing hearing was held on July 31, 2001. On August 3, 2001, the trial court issued a judgment entry in which appellant was sentenced to six months in prison and his driver's license was suspended for three years. Appellant filed the instant appeal and now assigns a single assignment of error:
 {¶ 10} "The trial court erred by denying [appellant's] [m]otion to [s]uppress [e]vidence which had been illegally obtained."
 {¶ 11} In his sole assignment of error, appellant argues that the trial court erred in denying the motion to suppress.
 {¶ 12} The Fourth Amendment cannot be invoked unless a person has been "seized." In other words, before an officer's actions will be scrutinized under the constitutional provision, it must be shown that the officer restrained the citizen's liberty through the use of physical force, no matter how slight, or through a show of authority. Terry v.Ohio (1968), 392 U.S. 1, 19. Thus, "* * * not all personal intercourse between policemen and citizens involves `seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a `seizure' has occurred." Id. at 19, fn. 16; State v. Johnston (1993),85 Ohio App.3d 475, 478.
 {¶ 13} A police officer may approach an individual for a consensual encounter, which is not considered a seizure for Fourth Amendment purposes. Florida v. Bostick (1991), 501 U.S. 429, 434. The hallmark of a consensual encounter is that a reasonable citizen must feel "free to decline the officers' requests or otherwise terminate the encounter." Id. at 439. A seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." United States v. Mendenhall (1980),446 U.S. 544, 554. Factors suggesting that a seizure has occurred include the presence of multiple police officers, the displaying of a weapon by the police, the use of language suggesting that compliance with police requests is compelled, and the physical touching of the citizen. Id.
 {¶ 14} Here, the concepts of stop and frisk are also involved as a result of the underlying facts. In justifying an investigative stop, an officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21. The assessment is to be judged against an objective standard. Id. at 21-22. "`An inarticulate hunch or suspicion is not enough. The officer must have a reasonable belief and specific facts upon which a reasonable suspicion could be based that appellant was violating or about to violate the law. Terry
* * *; Brown v. Texas (1979), 443 U.S. 47 * * *; Delaware v. Prouse
(1979) 440 U.S. 648 * * *.'" (Parallel citations omitted.) State v. Kish
(Nov. 5, 1999), 11th Dist. No. 98-L-148, 1999 WL 1073615, at 2, quotingMentor v. Webb (June 30, 1993), 11th Dist. No. 92-L-158, at 4. The determination of a reasonable suspicion must be made in light of the totality of the surrounding circumstances. State v. Bobo (1988),37 Ohio St.3d 177, paragraph one of the syllabus.
 {¶ 15} In the matter at hand, Officer Kacvinsky and Officer Giza were dispatched to Building I as a result of drug dealing, gambling, and drug use taking place in the hallway of the building. At that time, drug activity was prevalent in Building I, and the officers had personal knowledge of this location being the frequent site of drug trafficking and drug dealers. The officers responded to the call within three minutes and observed three men. Two of the men fled leaving appellant out in the common area. At that time, Officer Giza noticed appellant place his hand behind his back. When Officer Giza asked to see his hand, appellant refused. Therefore, there was sufficient reasonable suspicion for the officers to stop appellant.
 {¶ 16} We must next determine if appellant's continued detention was reasonable. It is well-settled law that "a police officer does not have the authority to automatically conduct a frisk of the detainee whenever a valid investigative stop has been initiated."Mentor-on-the-Lake v. Sawyer (Nov. 29, 1991), 11th Dist. No. 90-L-15-104, 1991 WL 252859, at 6. "Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others."Bobo, 37 Ohio St.3d at paragraph two of the syllabus.
 {¶ 17} Additionally, a police officer is permitted under certain circumstances to conduct a limited protective search of a detainee's person for concealed weapons. State v. Evans (1993), 67 Ohio St.3d 405,408. The purpose of this limited search is to allow an officer to pursue his or her investigation without fear of violence; it is not intended to provide the officer with an opportunity to ascertain evidence of a crime. Id. The United States Supreme Court sets forth the standard for a "frisk" as follows:
 {¶ 18} "Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. * * * And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or `hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." (Citations omitted.) Terry, 392 U.S. at 27.
 {¶ 19} When police officers are conducting a lawful Terry search for weapons, they may "seize nonthreatening contraband when its incriminating nature is `immediately apparent' to the searching officer through the sense of touch." Evans, 67 Ohio St.3d at 414, fn. 5, citingMinnesota v. Dickerson (1993), 508 U.S. 366. In Dickerson, the United State Supreme Court wrote:
 {¶ 20} "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." Dickerson, 508 U.S. at 375-376.
 {¶ 21} However, during the search, a police officer is prohibited from handling the object previously determined not to be a weapon in order to establish its incriminating nature. Evans,67 Ohio St.3d at 414. Once an officer locates contraband, the "immediately apparent" requirement is at issue and must be satisfied. In State v. Halczyszak
(1986), 25 Ohio St.3d 301, paragraph three of the syllabus, the Supreme Court of Ohio held that "[t]he `immediately apparent' requirement of the `plain view' doctrine is satisfied when police have probable cause to associate an object with criminal activity." The United States Supreme Court has characterized probable cause as "a flexible, common-sense standard." Texas v. Brown (1983), 460 U.S. 730, 742. In Brown, the Supreme Court further stated that probable cause:
 {¶ 22} "* * * merely requires that the facts available to the officer would `warrant a man of reasonable caution in the belief,' * * * that certain items may be contraband * * *; it does not demand any showing that such a belief be correct or more likely true than false. A `practical, nontechnical' probability that incriminating evidence is involved is all that is required." (Citations omitted.) Id.
 {¶ 23} Moreover, probable cause must "be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of [the search or] arrest [and] guided by his experience and training." United States v. Davis (D.C. Cir., 1972), 458 F.2d 819, 821.
 {¶ 24} In the case at bar, at the suppression hearing, Officer Giza and Officer Kacvinsky both testified that they thought that appellant may have been carrying a weapon, so they stopped him and conducted a pat down. Both officers testified they feared for their safety. Therefore, they wanted to see what was in appellant's hand.
 {¶ 25} We note that under a Terry pat down search, an officer is not entitled to reach into a detainee's pockets or ask the detainee to empty his or her pockets on pure speculation that a weapon might be present. See Evans, 67 Ohio St.3d at 414-416. It is our view that the instant matter is not a situation where Officer Kacvinsky relied on pure speculation that appellant was carrying a weapon on his person. Rather, Officer Kacvinsky and Officer Giza both indicated that they felt appellant was carrying a weapon and that they feared for their safety. Thus, Officer Kacvinsky decided to conduct a pat down search.
 {¶ 26} Furthermore, after Officer Kacvinsky received the results from the computer check, he decided to return the money that fell out of appellant's pocket. At that time, he noticed the container, which was in his plain view and contained a substance that looked like cocaine. In fact, Officer Kacvinsky testified it was immediately apparent as contraband. Hence, because the record demonstrated that the crack cocaine was immediately apparent to Officer Kacvinsky as contraband, its subsequent removal was justified pursuant to the standards set forth inDickerson. See, also, Kish, supra. We further note that the testimony at the suppression hearing revealed that Officer Kacvinsky is six feet five inches tall and appellant is about six feet one. Thus, due to Officer Kacvinsky's height and because he and appellant were standing in the stairwell, and appellant was a couple of steps below him, he noticed the container in appellant's pocket. Officer Kacvinsky also stated that as he was sticking the money inside appellant's side pocket, he noticed the container in the top pocket. He explained that the container was not all the way down in the pocket, but it was in the middle of the pocket holding the pocket open.
 {¶ 27} Arguably, as appellant contends, some of the plain view testimony may appear suspect. However, the same assertion applies equally to appellant's version of the events. The issue was actually one of credibility. As the court believed the police officer, there was no Fourth Amendment violation.
 {¶ 28} For the foregoing reasons, appellant's lone assignment of error is not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
JUDITH A. CHRISTLEY, J., DIANE V. GRENDELL, J., concur.